COLVERT v. WOOD.

(*Nashville.* March 1, 1894.)

1. WILLS. *Election and its effects.*

Testator devised to his widow and eight children, or their representa-
·tives, specific and distinct interests or parcels of realty. Three dev-
isees declined to take under the will, and recovered, by suit, three
undivided fifths in the lands devised to themselves and two others,
respectively, upon the theory that these lands were the property of
a firm composed of testator, said three dissenting devisees, and an-
other. The testator's one-fifth interest in the partnership lands de-
vised to the three dissenting devisees, and withdrawn from the oper-
ation of the will by their dissent, having been sold, the present
contest arose over the distribution of this fund, the three dissenting
devisees claiming that it should be distributed as in case of intestacy,
and the disappointed devisees, who were deprived of their portions
under the will by the action of the said dissenting devisees, claiming
that it should be applied to compensate them for the loss thus in-
flicted.

*Held:* The dissenting devisees are estopped, by their election, to take
any thing under the will, and further estopped to take, as heirs, any
part of said fund until the disappointed devisees have been fully
compensated for their loss. (*Post, pp. 456–463.*)

2. SAME. *Same.*

And the facts stated make a clear case where the three dissenting de-
visees were put to and exercised their right of election. (*Post, pp.
459, 460.*)

3. SAME. *Not annulled by devisees' dissent, when.*

And the devises and legacies of this will, being specific and independ-
ent, and for the most part not affected by the action of the three
dissenting devisees, the entire will is not thereby rendered nugatory.
(*Post, pp. 463, 464.*)

FROM DAVIDSON.

Appeal from Chancery Court of Davidson County.
ANDREW ALLISON, Ch.

NOAH W. COOPER and COLYAR, WILLIAMSON & COL-
YAR for Colvert.

STOKES & STOKES for Leek.

WILKES, J. In September, 1878, Thomas Leek
died testate in Davidson County. He left a widow,
Elizabeth Leek, and the following living children:
James A. Leek, A. D. Leek, M. M. Leek, Ten-
nessee Colvert, wife of J. E. Colvert, Sallie Rhea,
a widow, Nancy Frazer, a widow, and two sets of
grandchildren, who were the children of his de-
ceased daughter, Louisa Howington, and his de-
ceased son, Isaac Leek.

The will was duly admitted to probate, and, by
it, he left a tract of land to each of his children,
and to the children of his deceased children. He
also gave to his wife, Elizabeth Leek, one-half of
his personal property and one-half of the home
place, and to his son, M. M. Leek, the other half
of his personal property absolutely and the other
half of the home place for life, with remainder
to his children.

James A. Leek, Tennessee Colvert, and the
children of Isaac Leek declined to claim under
the will, and filed their bill in the Chancery Court
against the widow, Elizabeth Leek, and M. M.
Leek, and the other heirs, claiming that the greater
portion of the property disposed of by said will
did not belong to the testator, Thomas Leek, in-
dividually, though the title was in his name, but

to a partnership, composed of five members, each owning an equal amount, namely, the testator, Thomas Leek, James A. Leek, Tennessee Colvert, M. M. Leek, and the children of Isaac Leek. This bill was answered by M. M. Leek and the widow, Elizabeth Leek, in which they sought to uphold the will and defeat the claim set up in the original .bill.

After a protracted litigation, that cause was finally decided by the Supreme Court in December, 1886. That Court held that all of the property devised was partnership property, and owned by the members above named, excepting property to the amount of eight thousand dollars, the testator, Thomas Leek, having put that amount into the firm, while the other partners had contributed nothing. The cause was remanded for an account of the partnership matters, with directions that there should be first set apart to the estate of Thomas Leek eight thousand dollars, and that the balance of the property belonged, in equal amounts, to the partnership. In place of taking this account, the parties referred the matter to arbitration. In April, 1890, their award was made the judgment of the Court. The eight thousand dollar item was settled in part by crediting it with property valued at $7,912.50, which originally belonged to the partnership, but had been disposed of by Thomas Leek for his own use. The arbitrators fixed the interest of Thomas Leek in this fund at $7,063.42. This, however, was an estimated

value, as none of the real estate had been sold
when the award was made. The partnership assets
have now been reduced to cash, or its equivalent,
and, under the report of the Master, the interest
of Thomas Leek's estate in this fund, after de-
ducting from it all proper charges, amounts to
$6,522.69.

The main litigation in this cause is as to how
this fund shall be distributed. The award of the
arbitrators did not undertake to settle this matter.
The only parties interested in the main contention
in this case are the widow, Elizabeth Leek, M.
M. Leek, James A. Leek, Tennessee Colvert, and
the heirs of Isaac Leek. The other children and
grandchildren took possession of the property given
them under the will, and no question is raised as
to their right to same. They are simply made
parties in this cause in order to adjust the matter
of advancements, should that question arise. In
order to have all the matters before the Court, a
decree was entered, on January 11, 1892, consoli-
dating all the causes by consent. On August 11,
1892, the causes were tried and decrees entered.

The cause was again heard before the Chancel-
lor touching the rights of the parties to the fund
belonging to the testator, which had arisen by the
sale of the property which he had devised to
Tennessee Colvert, James A. Leek, and the heirs
of Isaac Leek, and which they declined to accept;
and, on June 10, 1893, a decree was rendered, in
which it was adjudged that this fund belonged to

the estate of Thomas Leek, and must be distributed as if he had died intestate as to same. Touching the rights of Elizabeth Leek and M. M. Leek thereto, the Court decreed as follows: "It appears to the Court, from the will of testator and the decrees of this and the Supreme Court, that the testator attempted to devise a large amount of property, all of which, except $8,000, belonged to said partnership; and that said will was in great part nullified by the action of Isaac Leek's heirs, Tennessee Colvert, and James A. Leek, at whose suit the partnership was set up, and who refused to accept, and have not received any thing under the will. Mrs. Elizabeth Leek and M. M. Leek sought, in these causes, to have the full amount of their legacies, respectively, given them under said will, paid out of the estate of Thomas Leek, and claimed that the property devised to Isaac Leek, James A. Leek, and Tennessee Colvert, but which they elected not to take, as above set out, should be used in compensating said Elizabeth and M. M. Leek for the deficiency in the devises made to them caused by the election of the above-named parties. The Court, however, decreed that this could not be sustained, since James A. Leek, Isaac Leek, and Tennessee Colvert *had never received any thing under said will.*"

Both parties appealed, and have assigned error, only one of which need be noticed, in the view we have taken of the case.

The appellants assign as error, that the Chan-

cellor erred in holding that the interest Thomas
Leek had in the real estate devised by him to
James A. Leek, Tennessee Colvert, and the heirs
of Isaac Leek, on their election to claim against
the will, should be distributed as the estate of an
intestate.

The contention by appellants is that these parties,
by their election to claim against the will, defeated,
in part, the devises, and the legacies to Elizabeth
and M. M. Leek, and the interest so willed to
the first-named parties should go to Elizabeth and
M. M. Leek, to compensate them for the deficiency
in the amount of their devises and legacies, occa-
sioned by the said election of the above-named
parties.

Appellees claim that it is not a case of election
at all, but that the partners only took their own
property, which constituted the bulk of the estate,
and the will must, therefore, be treated as inoper-
ative, as its main provision has failed, and the
fund in controversy must be distributed as that of
an intestate.

The logic of the Chancellor's decree is that, if
the heirs who elected to claim against the will,
had received any property under the will, they
must refund it in order to make up the legacy to
Elizabeth and M. M. Leek; but, if they have not
received it, then they can now receive it as heirs,
and it cannot be taken to make up the deficit in
other legacies caused by their election.

We think this is clearly a case where the devisee

is put to his election to take under the will or contrary to it. If they had taken under the will, they must have received the undivided one-fifth interest of Thomas Leek in the respective tracts allotted them, in addition to their own shares. This may or may not have been more than their shares in the partnership. It is evident, therefore, that he gave a portion of this partnership property to Elizabeth and M. M. Leek, to which the other parties were entitled, and, at the same time, he gave to the several parties property which was his own interest in the partnership and not theirs. These heirs and partners were thus placed in position to elect whether they would take under the will or take their shares in the partnership and relinquish the share of Thomas Leek in the partnership, which he proposed to give them under the will.

They elected to take what belonged to them outside of the will, and thus they set free the share of Thomas Leek in the partnership. This being the case, we think the law is, that no part of this fund can go to them as heirs, under the will, until the deficiencies in the other legacies, caused by their election, have been made up.

Mr. Pomeroy, Sec. 517, states the general doctrine as follows: "If the legatee elects to claim against the will, he, thereby, retains his own property, and must compensate the disappointed donee out of the estate given to himself by the donor. A Court of Equity will then sequester the benefits

intended for the electing beneficiary, in order to secure compensation to those persons whom his election disappoints."

Judge Story, at Secs. 1082–3, Equity Jurisprudence, states the doctrine thus: "In the actual application of the doctrine of election, Courts of Equity proceed upon principles which are totally incapable of being enforced in the like manner by Courts of Law. Thus, for example, suppose a case of election under a will which disposes of other property of a devisee, and the devisee should elect to hold his own property, and renounce the benefits of the devise under the will, or (as the compendious phrase is) should elect to claim against the will; in such a case, it is clear that the party disappointed of his bequest or devise by such an election, would, at law, be wholly remediless. The election would terminate all the interest of the parties, respectively, in the subject-matter of the devise to them. The election to hold his own estate, would, of course, maintain the original title of the devisee, and his renunciation of the intended benefit in the estate devised to him, would leave the same to fall into the residuum of the testator's estate as property undisposed of.

"But the subject is contemplated in a very different light by Courts of Equity; for, in the event of such an election to take against the instrument, Courts of Equity will treat the substituted devise, not as an extinguished title, but as a trust in the devisee for the benefit of the disappointed

claimants, to the amount of their interest therein; .or, as it has been well expressed, they will assume jurisdiction to sequester the benefit intended for the refractory donee in order to secure compensation to those whom his election disappoints."

In a note to the case of *Gretton* v. *Haward*, 1 Swanston, 409, a vast number of authorities are collated, closing with the following clear statement of the principle: "If the will is in other respects so framed as to raise a case of election, then not only is the estate given to the heir under an implied condition that he shall confirm the whole of the will, but, in contemplation of equity, the testator means, in case the condition shall not be complied with, to give the disappointed devisees, out of the estate over which he had a power, a benefit correspondent to that of which they are deprived by such non-compliance. So that the devise is read as if it were to the heir absolutely if he confirm the will; if not, then in trust for the disappointed devisees as to so much of the estate given to him as shall be equal in value to the estates intended for them."

The doctrine is thus laid down in 2 Jarman on Wills, page 1: "The doctrine of election may be thus stated: That he who accepts a benefit under a deed or will, must adopt the whole contents of the instrument, conforming to all its provisions, and renouncing every right inconsistent with it. If, therefore, a testator has affected to dispose of property which is not his own, and has given

a benefit to that person to whom the property belongs, the devisee or legatee accepting the benefit so given to him, must make good the testator's attempted disposition; but if, on the contrary, he chooses to enforce his proprietary right against the testator's disposition, equity will sequester the property given to him for the purpose of making satisfaction out of it to the person whom he, has disappointed by the assertion of his rights.

"The doctrine specially applies when the owner of an undivided share devises the property by words of description or donation imputing an intent to give the entirety. Then a case of election is raised against the other co-owner who receives a benefit under the same will."

See doctrine discussed in 1 Pomeroy, Sec. 489, and it applies to the heir as well as to a stranger. Story's Eq., Sec. 1094; *Schley* v. *Collins*, 13 L. R. A., 567.

We are unable to agree with counsel for appellees that the effect of this action on the part of the dissenting devisees resulted in rendering the will nugatory, and that this interest of Thomas Leek should be divided among his children as if he had died intestate.

The cases cited in Wendel, 14 and 16, are not applicable. There the will failed because its main provisions were illegal, and the others were clearly dependent upon them. In such case the property attempted to be disposed of fell back into the estate as property undisposed of, and, as the provisions

were mutually dependent, the whole will must fail. Here the legacies and devises are specific and independent, and the will fails not because it is illegal or invalid, but because of the action of the dissenting devisees in withdrawing from it property assumed to be conveyed by it. In the one case, the main provision of the will was inoperative because illegal, but, in this, it is inoperative as to a portion of the property, because rendered so by the devisees themselves.

It would take a very plain case to set aside a will in this way, when specific devises are made which are independent of each other. In this case many of the devises do take effect and stand, and all of them in fact, except those of the dissenters and the widow and M. M. Leek. It is evident that the testator intended to give the widow and M. M. Leek the home place and other property which he did give them, and we cannot presume that he would have changed this purpose if he had reflected that the other property devised to them would not pass as he directed. If he had known that he did not own this property taken out from his will, he might have still given to his widow and M. M. Leek the same property he did give them.

Without further elaboration, we are of opinion that the Chancellor's decree must be reversed, and the assets in controversy must be applied to compensate Elizabeth and M. M. Leek for the deficit in their legacies, which will more than consume

Colvert *v.* Wood.

the funds, and leaves it unnecessary for us to pass on the other assignments in detail. We think the remainder of appellant's and all of appellee's assignments must be overruled.

The decree is reversed, and cause remanded. Costs will be paid by the dissenting devisees.

---

.OPINION ON PETITION TO REHEAR.

On petition to rehear, the Court delivered the following opinion:

WILKES, J. In this cause a very earnest petition to rehear is filed, and supported by elaborate printed brief and argument, the main point of which is that the Court erred in holding that the present is a proper case to apply the doctrine of election. In order that petitioner's position may be correctly stated, a quotation is made from the brief:

"The doctrine of election never applies, and is never enforced to make good the disappointed legatee, except in cases where the refractory legatee gets something or claims something under the will, out of which he can make good the loss to the disappointed legatee. He must not only get something out of the will, but he himself must, by taking his own property, thereby render the will inoperative as to the disappointed legatee. The Court manifestly understood the doctrine of election to apply, and that refusing to take under the

30—9 P

will was electing *against* the will; whereas, by all the authorities, to elect against the will is to claim a devise or bequest given, and, at the same time, to claim property which belonged to such devisee, which the testator had undertaken to give away to another. The doctrine of election never applies except when the legatee has property given to him by the will and property of his own given away, or attempted to be given away, to another."

The Court differs from counsel in his contention that the doctrine of election never applies except in cases where the refractory legatee actually takes or claims something under the will. On the contrary, when he *elects against the will*, he takes *nothing under it* until after the disappointed legatee is made whole in his legacy. When he elects to *take under the will*, then he *surrenders his own property conveyed by the will*, even though he owns such property independently of the will. Counsel illustrates his position as follows:

"The testator may devise a tract of land which belongs to his son, John, to his other son, William, and, in the same instrument, give John another tract of land. In this, John is put to his election; and that is, he may, of course, keep his own property willed to William. But, on the other hand, he may elect to take under the will. When he elects to take under the will, he must let the devise to William stand, though it was his property willed; or, rather, under the authorities, the law is now settled that, to the extent *only* of his

legacy, is he required to make good the legacy to
William; and this, upon the equitable doctrine that
the Court will reform the words of the will, and
do justice between John and William as legatees.
(See Pomeroy, Vol. I., Secs. 464–467; also Story,
Vol. II., Secs. 1078 to 1083, especially 1083.) This
is the whole of the doctrine of election. There
is nothing else in it."

Now, the case thus put by counsel is when
John elects to take *under the will*, in which case
the devise to William must stand also. But John
may elect to *take against the will*—that is, claim
his own property by his superior title. In that
event, he can take *nothing under the will*, but must
allow the devise intended for him to go over to
William as compensation for that which William
cannot get under the will.

The mistake of counsel is in forgetting that
there may be an election *against* the will as well as
*for the will. This alternative privilege is the ground-
work of the doctrine of election.* The true statement
of the doctrine is that election applies when prop-
erty of the testator is *attempted* to be given to
the devisee or legatee at the same time the testa-
tor *attempts* to give away the property of the
devisee or legatee to another by will. The devisee
or legatee, in all such cases, must elect whether to
claim his own property or that given him by the
testator; and, when he elects to take the one, he
surrenders the other, so far as is necessary to
make up the share of any devisee or legatee that

may thus be diminished or destroyed by his election against the will.

Now, in this case the testator tendered to these partners his undivided one fifth interest in the partnership property which he owned, but coupled it with a gift of the entire property, four-fifths of which he did not own. When the partners elected to hold the partnership property by their paramount title, then they surrendered the interest of the testator in the partnership so far as was required to make up to Mrs. Leek and M. M. Leek, the disappointed legatees, their legacies. They did not become individually liable to the disappointed legatees, because they received nothing under the will.

Counsel is in error in treating the $6,500 fund as partnership funds, and in stating that Thomas Leek's interest in the same is one-fifth, or $1,350. On the contrary, the $6,500 is Thomas Leek's share in the partnership, and the whole of it is his as such share, and it is so shown in the reports and decrees in the cause. It is this fund of $6,500 which was tendered to the partners by the will, and which they elected not to take, which must go to Mrs. Leek and M. M. Leek to make up their shares; and the partners, having elected not to take it under the will, cannot take it as heirs until after the disappointed legatees are made up their full amounts.

The petition to rehear must be dismissed.