Hillsborough, }
April 7, 1914. }

MARY L. COTTON, *Ex'x*, *v.* ALICE R. FLETCHER *& a.*

Where a widow waives the provisions of a will which gives her a life estate in certain funds, the remainders are not thereby accelerated so as to take effect immediately, if it is evident that the testator did not intend such a result.

If in such case the widow's waiver results in a substantial diminution of the funds available for distribution among the remaindermen and at the same time leaves the income allotted to her by the will undisposed of, the latter should be applied in making up the disappointment of the legatees, such reductions in amount and changes in time of payment being made as shall equitably apportion their respective losses and effectuate as nearly as may be the intent of the testator.

In the absence of a contrary provision in the will, pecuniary legacies are payable at the end of a year from the decease of the testator, without interest.

Where a will provides for annuities to certain persons until legacies to them are paid, and by an evident mistake the clause includes the names of two persons to whom nothing further is bequeathed, the will may be given effect by paying to such parties the sums specified for the year which would elapse before their legacies, if given, would be due.

BILL IN EQUITY, for advice as to the duties of the executrix of the will of John E. Cotton. Carl Cotton, a trustee under the will, joined in asking direction as to his duties. At the request of the parties, the case was transferred without a ruling from the September term, 1914, of the superior court by *Kivel*, J.

John E. Cotton died in 1912, testate, leaving an estate of about $300,000. He was survived by a widow, several nephews and nieces, and Alice R. Fletcher, who, though not related to him, had been reared in his family and was treated as his daughter.

The will gives the widow a small amount of property outright,

and a life interest in a fund of $50,000 and in two thirds of the remainder of the estate. After her death, one half of the residue of both funds goes to Mrs. Fletcher if she be then living, and the balance in smaller fractions to sundry relatives and charities. The other third of the remainder was given to Mrs. Fletcher. The widow waived the provisions of the will in her favor and took one half of the estate. This reduced the amount going to the remaindermen by about $100,000 and left to be applied in some way the income for her life of the $50,000 fund and of two thirds of the remainder. The material parts of the will are as follows:

"Twentieth. On the death of my wife, I desire that the trust fund of $50,000 in the hands of Carl Cotton shall be divided as follows: One half to my daughter, Alice R. Fletcher, and if she shall not be living then to her issue, if any; one eighth to Carl Cotton, if he shall not be living then to his heirs; one eighth to G. Melrose Cotton, if he shall not be living then to his wife, and if she be dead then to their issue; one eighth to the Good Cheer Society of Nashua for a fund to maintain a district nurse, if said society is not in existence then to any other organization doing this kind of work; one eighth to be divided equally between the two trust funds established in sections marked 'ninth' and 'tenth,' to be invested with the same and to become a part of the same." A codicil provides for the like distribution of the two thirds of the remainder.

"Twenty-second. I desire that each of the following shall receive the amount set against their name each year until they are paid their bequest: . . . Mrs. Carl Cotton, Marlboro, N. H., $100; Mrs. G. Melrose Cotton, Fairfield, Me., $100." These two persons are not otherwise mentioned in the will. The other payments provided for in paragraph 22 are to six legatees.

*George B. French* (by brief and orally), for the plaintiff.

*Robert A. French* and *Jones, Warren, Wilson & Manning* (*Mr. French* and *Mr. Manning* orally), for Alice R. Fletcher.

*Frank B. Clancy,* for Carl Cotton, trustee.

*Abner S. McLoud* and *Wason & Moran,* for G. Melrose Cotton.

PEASLEE, J. The principal question argued by counsel is whether

the remainders after the life estate to the widow are accelerated so as to take effect immediately, by reason of the fact that the widow has waived the provisions for her. While the general rule is that such acceleration will take place (*Parker* v. *Ross*, 69 N. H. 213), yet the principle is not applied in all cases. Like all other rules for the interpretation of a will, it yields to the manifest intent of the testator. If it is evident that the testator did not intend such a result, there will be no acceleration. *Lovell* v. *Charlestown*, 66 N. H. 584; *Hayward* v. *Spaulding*, 75 N. H. 92; *Smith* v. *Patch*, *ante*, 75.

It appears that the action of the widow in waiving the provisions made for her has resulted in a diminution of the amounts going to the remaindermen of over $100,000. At the same time her waiver has left undisposed of the income for her life of a fund of $50,000 and of two thirds of the remainder (about $16,000), amounting in all to $66,000. The question is: what is to become of this income? Is it to be treated as estate not disposed of by the will, save by the residuary clause, or is it to be applied to make up the loss of legatees whose shares have been decreased by the widow's waiver? The general rule appears to be that it should be applied to making up the disappointment of the legatees. 1 Pom. Eq. Jur. 780, 856; 1 Woern. Adm. 273. The question does not seem to have arisen in this state; but entirely apart from the so-called rule of construction, the same result would be reached here in cases where it was made to appear that such course would most nearly carry out the purposes the testator had in mind.

In the present case the question is not a doubtful one. The chief disappointment caused by the diminution of the remainder falls upon Mrs. Fletcher. Although not related to the testator, she had been brought up in his family. He speaks of her as his daughter in the will and makes large bequests to her. He was certainly as much interested in providing for her as for his collateral relatives, or for sundry charities. In so far, then, as her disappointment is disproportionate to that of others, it is to be made good from the income of the $66,000.

As to two thirds of the remainder, she suffers exactly as others do. Her one half of this two thirds and their smaller fractions are all payable at the same time. These remaindermen all stand alike and must bear proportionate reductions. But as to the other third of the remainder, Mrs. Fletcher's loss is peculiar to her, because this legacy was payable to her upon the settlement of the

estate. Her loss is disproportionate to the extent that a dollar payable upon the settlement of the estate exceeds in value a dollar payable at the death of the widow. The suggestion on her behalf is that the proportion be fixed by taking the widow's expectation of life as the term, and discounting the two thirds at the rate of five per cent per annum.

The principle upon which this claim is based appears to be correct. Whether the rate of discount assumed is the most reasonable one under the circumstances is a question of fact to be settled hereafter. When the rate has been determined, the proportion in which the owners of the two thirds of the remainder are to share with Mrs. Fletcher can readily be ascertained. If, as counsel claim, two dollars payable at Mrs. Cotton's death is worth only as much as one dollar payable now, then the remaindermen take one half the income and Mrs. Fletcher the other half. If the present value of the two thirds is greater or less, the division of the income will vary accordingly.

That portion of the income decreed to Mrs. Fletcher, to make up her disappointment as to her one third of the remainder, should be paid over to her annually, or oftener, as it accrues. It was the testator's intent that she have this third upon the settlement of the estate. Payment of the income as it accrues will more nearly carry out this intent than any other course.

The share of the income belonging to the owners of the other two thirds of the remainder cannot now be distributed. As to a large part of this fund, it cannot be determined who takes until the death of Mrs. Cotton. This part of the income is to be held by the trustee as a separate fund, to be invested by him and the income added to the principal during the life of Mrs. Cotton. At her death the whole is to be added to the two thirds of the remainder, to be distributed as provided in the will.

A question is also raised as to the time when certain legacies are payable, or when interest upon them is chargeable to the estate. There is nothing in the will to show an intent to vary the statutory rule. The general legacies are all payable at the end of a year from the death of the testator. *Kingsbury* v. *Bazeley*, 75 N. H. 13. The small payments provided for in paragraph 22 of the will are evidently intended to be in addition to what would otherwise be payable to the legatees.

The testator provided for certain payments to persons named "each year until they are paid their bequest." Included in this

list are two persons to whom no bequest is made in the will or codicil. The claim is made that the sum set opposite each of their names ($100) is payable to each of them as a life annuity. This claim is based upon a supposed purpose to provide for certain classes of relatives. There is no satisfactory evidence of such purpose, and the argument cannot prevail.

There is here an evident mistake in the will. The provision in question refers to bequests which do not exist. This is some evidence that the error was in the insertion of these two names, and that the provision should be treated as a nullity. But this will not be done in the absence of convincing proof of the necessary facts. The whole will is to be given effect. This can be done by paying to these parties the sums specified for the time which would elapse before legacies to them, if given, would be payable, that is, for one year. The executrix is advised that they are to receive $100 each.

This covers all the matters referred to in the case as transferred. The trustee, in his brief, asks for advice upon other matters pertaining to the details of the execution of his trust and to complaints he makes of the conduct of the executrix in managing the estate. If these are proper questions to be settled in this way, they cannot in any event be passed upon until the facts in relation to them have been found.

*Case discharged.*

All concurred.