## SELLICK *v.* SELLICK.

1. WILLS—CONSTRUCTION—LIFE ESTATE.
    Where a husband's will gave to his wife "$25,000, to be used and enjoyed by her during her life, and at her death to be equally divided between" his nephew and niece, *held*, to give the widow the use of the money for her life, a life estate, and no more.

2. SAME.
    That testator in one clause of his will gave said nephew and niece $5,000 to be paid presently, in no way modified the plain, unambiguous language of another clause giving them $25,000, to be paid upon the death of the wife.

3. SAME—TERMINATION OF LIFE ESTATE—DISPOSITION OF FUND.
    Where the widow took under the statute and rejected the life estate in the $25,000 given her in the will, thereby diminishing the fund of the residuary legatee, *held*, that said sum should be placed in trust and the income therefrom paid to the residuary legatee during the life of the widow and at her death the *corpus* be paid to the remaindermen.

4. SAME—ACCELERATION—APPLICABILITY.
    While the doctrine of acceleration of the time of taking effect of the remainder upon the termination of the life estate by act other than the death of the life tenant must

be recognized and applied in proper cases, such doctrine should not be applied where, by the election of the widow to take under the statute, a portion only of the legacies are diminished in order to make up the amount required by the statute to satisfy the widow's statutory rights.

Appeal from Van Buren; Des Voignes, J. Submitted June 11, 1919. (Docket No. 3.) Decided August 9, 1919.

Bill by William R. Sellick against Arthur F. Sellick and another for the construction of a will. From a decree for plaintiff, defendants appeal. Reversed, and decree entered.

*Thomas J. Cavanaugh,* for plaintiff.

*Alfred J. Mills,* for defendants.

FELLOWS, J. This case involves the construction of the will of William J. Sellick, late of Paw Paw, Van Buren county, and the effect as between certain of the legatees of the election of the widow to take under the statute. Mr. Sellick left real estate inventoried at $8,500 and personal property inventoried at upwards of $176,000. He left a widow, Caroline Sellick, and one son, William R. Sellick, the plaintiff, now grown to manhood, who was the child of a former wife. He also left collateral kindred, including the defendants Arthur F. Sellick, a nephew, and Gertrude Sellick, a niece. To his collateral kindred other than defendants he gave varying sums aggregating $15,-000. By the second clause of his will he gave to each of the defendants $5,000. The first clause of his will is as follows:

"I give, devise and bequeath to my wife, Caroline Sellick, Twenty-Five Thousand Dollars ($25,000), to be used and enjoyed by her during her life and at her death to be equally divided between my nephew, Arthur F. Sellick, and my niece, Gertrude Sellick."

The residue of his estate he gave to his son, the plaintiff. The widow elected to take under the statute. The trial judge construed the first clause of the will, when taken in connection with the second clause which gave each defendant $5,000 and the residuary clause, as giving the widow absolutely $25,000, and accordingly held that the defendants took nothing under such clause. This rendered unnecessary the determination of the other questions involved. From a decree in accordance with these views the defendants appeal and it is here urged by their counsel that the first clause of the will gave the widow a life estate with remainder over to them; that by the election of the widow to take under the statute her life estate is at an end, and that applying the doctrine of acceleration of remainders they are now entitled to said sum of $25,000. On the other hand, it is insisted by counsel for the appellee that the bequest to the widow gave her an absolute estate; that the bequest falls within that class of bequests controlled by *Jones* v. *Jones*, 25 Mich. 401, and kindred cases, and that the decree should be affirmed. It is further insisted by appellee's counsel that if we decline to follow this contention and accept the view that a life estate only was given the widow, still we should not apply the doctrine of acceleration of remainders, but that such life estate given to the widow by the will should be sequestered to reimburse the plaintiff in part for the depletion of his bequest occasioned by the payment out of it of the sums necessary to make up the widow's statutory share. In short, that he is known in the law as a disappointed legatee, and that the doctrine of acceleration of remainders should not be adopted at the expense of disappointed legatees.

We are not disposed to take time or space in differentiating between the instant case and *Jones* v. *Jones*, *supra*, and kindred cases. Under the repeated deci-

sions of this court the clause of Mr. Sellick's will above quoted gave the widow the use of $25,000 for her life, a life estate, and it gave her no more. *Glover* v. *Reid*, 80 Mich. 228; *Gadd* v. *Stoner*, 113 Mich. 689; *Farlin* v. *Sanborn*, 161 Mich. 615 (137 Am. St. Rep. 525); *In re Moor's Estate*, 163 Mich. 353; *Bateman* v. *Case*, 170 Mich. 617; *Laberteaux* v. *Gale*, 196 Mich. 150. The opinions in these cases together with the authorities cited in them establish beyond doubt that under the language found in this clause Caroline Sellick took but the life use of $25,000. While it is true that the entire will must be considered, we find nothing at variance from this conclusion in any of its provisions. The fact that the testator gave each of the defendants $5,000 to be paid presently in no way modifies the plain, unambiguous language of clause one by which he gave them $25,000, to be paid upon the death of his wife.

This brings us at once to the interesting and novel questions in the case. It must be conceded at the outset that the decisions of the court of last resort of the State of Pennsylvania sustain the contention of defendants' counsel unequivocally. *Coover's Appeal*, 74 Pa. St. 143; *Ferguson's Estate*, 138 Pa. St. 208 (20 Atl. 945); *Vance's Estate*, 141 Pa. St. 201 (21 Atl. 643, 12 L. R. A. 227, 23 Am. St. Rep. 267). Is the rule laid down by the Pennsylvania court supported by the weight of authority and by equitable principles? Should the doctrine of acceleration of remainders be applied where by its application the remainderman gets more than the will gave to him and legatees either specific or residuary get less? To these questions we shall now direct our attention

Some support is given defendants' contention by the holding of the court of appeals of Kentucky in *Trustees Church Home* v. *Morris*, 99 Ky. 317 (36 S. W. 2). But in that case it was said:

"There is no reason whatever, in this case to depart from the direct command of the testator to distribute this estate in the manner in which he directs it to be done. It might be different if an intention was apparent to benefit certainly the residuary legatees, and the bulk of the estate was expected to be left for them. In such event they, and not others, could be said to be the chief objects of the testator's bounty, and they would be protected, not because it would be equitable or just, but because such was the intention of the testator."

And *Sherman* v. *Baker*, 20 R. I. 446 (40 Atl. 765, 40 L. R. A. 717) ; *Dean* v. *Hart*, 62 Ala. 308; *Slocum* v. *Hagaman*, 176 Ill. 533 (52 N. E. 332), and *Adams* v. *Gillespie*, 55 N. C. 244, give color to defendants' claim. But some of these cases only consider the general doctrine of acceleration of remainders and do not determine that such doctrine should be applied where by an election not to take under the will other legacies to other legatees are diminished.

That the determination of the life estate by act other than the death of the life tenant is as effective to let the remainderman into possession as the death of the life tenant, that the time of taking possession is accelerated by such act, is generally recognized in this country and in England. Thus in *Jull* v. *Jacobs*, 35 L. T. Rep. 153, the testator gave a life estate to his daughter with remainder over to her children on their becoming of age. The daughter witnessed the will thus incapacitating her from taking the life estate. The life estate having failed from this fact it was held that the children who took the fee should be let into possession at once, Vice Chancellor Malins remarking:

"Then, taking away her life estate, does that cause an intestacy as to the life, or an acceleration of the estate in remainder? It is clear that the children are postponed because of the mother's life estate, but if she does not take the life estate why should they be

postponed? It is a mere accident, through ignorance on the part of the testator, and I think that, as the tenant for life cannot take, the reason for postponing the children ceases."

In the case of *Lainson* v. *Lainson,* 18 Beav. 1, the testator gave an estate for life to A and on his decease to B in tail. By a codicil he revoked the devise to A. It was held that the estate of B was accelerated and that he took at once. A similar result was reached on a similar state of facts in *Eavestaff* v. *Austin,* 19 Beav. 591. But it has also been held in England that where the heir takes against the will under which he received considerable benefit, those devisees and legatees disappointed by such election may not have a lien upon the estate but may require such heir to account for the whole amount received by him under the will. *Greenwood* v. *Penny,* 12 Beav. 403.

This court has recognized the doctrine of acceleration of remainders upon the termination of the life estate of the widow by her election to take under the statute. *In re Schulz's Estate,* 113 Mich. 592. But that was a case where none of the legatees were in any way harmed by the application of the doctrine. By the election of the widow to take under the statute their bequests were proportionately diminished, and by the acceleration of their remainders they were proportionately reimbursed.

The supreme court of Ohio in *Millikin* v. *Welliver,* 37 Ohio St. 460, has also recognized the doctrine of acceleration of remainders. But that case like the *Schulz Case* did not involve a disappointed legatee whose legacy was depleted to make up the sum paid to the widow for her statutory right. This was pointed out by that court in the later case of *Holdren* v. *Holdren,* 78 Ohio St. 276 (85 N. E. 537, 18 L. R. A. [N. S.] 272), where the court quoted from the former case and said:

"This holding is based upon the doctrine of acceleration, but it must be understood as limited to cases in which that doctrine is applicable; otherwise it is too broad. In that case there was no disappointed legatee, but all of the estate went to the remainderman. It is well settled, when a widow elects not to take under a will, but to take under the law, her portion under the will will be sequestered to compensate those beneficiaries under the will whose shares are cut down by her election."

And this was but a reiteration of the early case of *Jennings* v. *Jennings,* 21 Ohio St. 56.

So likewise the court of appeals of Maryland recognized the doctrine of acceleration of remainders. *Randall* v. *Randall,* 85 Md. 430 (37 Atl. 209), but declined to apply it in a case somewhat similar to the instant case. *Hinkley* v. *The House of Refuge,* 40 Md. 461 (17 Am. Rep. 617). Considering the rule it was there said:

"But, while this is the general rule, it is modified under certain circumstances, by the application of the principles of equity, where it is apparent that the event producing the acceleration of the time for vesting the remainder in possession, is not contemplated by the will, and the result produced would contravene the intention of the testator. In this case, it is manifest that it was never contemplated by the testator that the legacies now claimed as payable presently, should be paid before the death of his widow. The renunciation by the widow is an event not provided for by the will; and as by that event a certain portion of the principal or *corpus* of the estate is withdrawn from the trust intended for the benefit of the children of the daughter and sister of the testator, it is but equitable that they should be indemnified or compensated as far as can be, by the appropriation of the benefit renounced by the widow. This is not an application to compel an election, but to have declared the effect of an election already made; and, in such case the general and well established principle applies, that a court of equity will assume jurisdiction to sequester the benefit intended for the refractory donee,

in order to secure compensation to those disappointed by the election."

And in the later case of *In re Rogers' Trust Estate,* 97 Md. 674 (55 Atl. 679), the Maryland court again declined to apply the doctrine because so to do would be contrary to the intent of the testator.

The supreme court of New Hampshire in a case similar to the *Schulz Case (Parker* v. *Ross,* 69 N. H. 213 [45 Atl. 576]), applied the doctrine of acceleration of remainders, but when that court had before it the question of a disappointed legatee whose estate had been diminished by the election of the widow, and such diminution differed in proportions from other legatees (*Cotton* v. *Fletcher,* 77 N. H. 216 [90 Atl. 510, Ann. Cas. 1915A, 1225]), the doctrine contended for by the plaintiff here was applied, and the estate given the refractory legatee by the will was held for the purpose of indemnifying the disappointed legatee.

In the case of *Jones* v. *Knappen,* 63 Vt. 391 (22 Atl. 630, 14 L. R. A. 293), the court had before it a case quite similar to the instant case. We quote from the syllabus:

"The election of the widow, who is made life tenant of her husband's property, to take against his will, does not accelerate the time for distribution so that it may be made during her life time; where the remainder is to be divided between specific and residuary devisees and the result of her election would work inequity by diminishing the residuary, and leaving the specific devisees to be paid in full."

In this case the court quotes the following from 1 Woerner on Administration, § 119:

"The rejection by the widow of the provisions made for her by the will generally results in the diminution or contravention of devises and legacies to other parties. The rule in such case is that the devise or legacy which the widow rejects is to be applied in compensation of those whom her election disappoints."

And then says:

"The controlling, and, we think, the more reasonable, principle announced in most of these cases, is the one expressed by Woerner, *supra*, viz., to use the renounced devises and legacies given by the will to the widow, to compensate, so far as may be, the devises and legacies diminished by such renunciation. When the remaindermen are affected *pro rata* by such renunciation, acceleration of the enjoyment of their devises or legacies, diminished proportionally, will equitably compensate them, so far as possible, for such diminution. But in this case acceleration of enjoyment would increase the specific pecuniary legacies, to the detriment of the residuary legatees, whose shares only are diminished by the renunciation. Applying the principle stated, the life use of the property given by the will to the widow, and renounced by her, should be used to compensate the residuary legatees, the next of kin of the testator and of his wife."

Another quite similar case to this one is that of *Firth* v. *Denny*, 2 Allen (Mass.), 468. We quote the syllabus:

"A testator in his will, after various absolute devises and bequests, directed a certain sum to be invested, and the income thereof to be paid to his wife during her life, and, after her death, to be distributed among various legatees in certain specified sums, and gave the rest of his estate to his residuary legatees. He died without leaving issue, and his widow waived the provisions of the will in her behalf, and thereby became entitled to a larger share of his estate than the will gave her. *Held*, that the residuary legatees are entitled, during the life of the widow, to the income of the fund provided for her, and after her death the principal should go to the legatees named in the will, in like manner as if the widow had accepted the provisions therein made for her."

See, from the same court, *Brandenburg* v. *Thorndike*, 139 Mass. 102 (28 N. E. 575).

In *McReynolds* v. *Counts*, 9 Grat. (Va.) 242, the court had before it the question here involved. The

widow had renounced the provisions of the will, and it was determined that the disappointed legatees were entitled to the estate renounced for the purpose of reimbursing them the amount of their disappointment, and such estate was placed under the control of the court for such purpose.

Mr. Pomeroy in his work on Equity Jurisprudence (1 Pomeroy Eq. Jur. [4th Ed.] § 517) says, in considering the question of elections:

"The other parties interested as donees under the instrument creating the necessity for an election are affected by it, when made, in the following manner: If the person on whom the duty of electing rests elects to take in conformity with the will or other instrument of donation, he thereby relinquishes his own property, and must release or convey it to the donee upon whom the instrument had assumed to confer it. If he elects against the will or other instrument of donation, he thereby retains his own property, and must compensate the disappointed donee out of the estate given to himself by the donor. A court of equity will then sequester the benefits intended for the electing beneficiary, in order to secure compensation to those persons whom his election disappoints. This rule is applied in many of the American cases cited below to elections made by widows in favor of their dower and against the testamentary provisions, whereby the interests of other devisees were disturbed. Such disappointed devisees 'are held entitled to compensation out of the benefits intended to be conferred by the will on the widow, but which she had rejected."

See, also, *Timberlake* v. *Parish,* 5 Dana (Ky.), 346; *Wakefield* v. *Wakefield,* 256 Ill. 296 (100 N. E. 275, Ann. Cas. 1913E, 414) ; *Fox* v. *Rumery,* 68 Me. 121; *Lovell* v. *Charlestown,* 66 N. H. 584 (32 Atl. 160) ; *Ford* v. *Ford,* 70 Wis. 19, 54 (33 N. W. 188, 5 Am. St. Rep. 117) ; *Colvert* v. *Wood,* 93 Tenn. 454 (25 S. W. 963) ; *Miller* v. *Miller,* 91 Kan. 1 (136 Pac. 953, L. R. A. 1915A, 671, Ann. Cas. 1917A, 918) ; *Latta* v. *Brown,* 96 Tenn. 343 (34 S. W. 417, 31 L. R. A. 840) ; *Carper* v. *Crowl,* 149 Ill. 465 (36 N. E. 1040) ;

*Woods' Adm'r* v. *Woods' Devisees*, 1 Metc. (Ky.) 512;
2 Alexander on Wills, §§ 837, 838; 1 Woerner on Administration (2d Ed.), § 119, p. 293; and notes in 12
L. R. A. 227; 14 L. R. A. 293; 18 L. R. A. (N. S.)
272; 27 L. R. A. (N. S.) 602; L. R. A. 1915A, 671;
Ann. Cas. 1913E, 416.

We are persuaded that under the great weight of
authority the contention of plaintiff's counsel in this
regard must prevail.   While the doctrine of acceleration of the time of taking effect of the remainder upon
the termination of the life estate by act other than
the death of the life tenant (*i. e.,* by the election of
the widow to take under the statute), must be recognized and applied in proper cases, such doctrine should
not be applied where by the election a portion only
of the legacies are diminished in order to make up the
amount required by the statute to satisfy the widow's
statutory rights.   And that this should be true whether the legacy diminished be a specific or a residuary
one.   Under such circumstances the disappointed legatees may in a court of equity compel the sequestration
of the legacy to the refractory legatee for the purpose
of diminishing the amount of his disappointment.

Manifestly this is in consonance with equitable
principles.   In the instant case the residuary fund
given to the plaintiff has been diminished by many
thousand dollars in order to discharge the claim of
the widow resulting from her election.   To adopt defendants' claim would give to them the $25,000 many
years before the time fixed by the testator for its payment.   They would not only receive the amount given
them by the will, but they would also receive the
widow's life estate renounced by her to the disadvantage of the plaintiff.   Equitable principles do not require that this should be done.

We are asked to fix the present worth of the widow's
life use of the $25,000 with a view of finally closing

the estate and disposing of all matters at once. The parties interested are all of age and may make such adjustment as they may desire, but we do not feel empowered to fix the present worth of the widow's use and direct its present payment. We see no occasion, however, to longer hold the estate open. A trustee may be appointed to handle this fund of $25,-000. He shall annually pay the income thereon to the plaintiff during the life of the widow, and upon her death pay the *corpus* to defendants in equal shares.

It follows that the decree must be reversed and one here entered in conformity with this opinion. The defendants will recover costs of this court. Neither party will recover costs of the circuit court.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.