71 N.J. Super. 450 (1962)
177 A.2d 292
IN THE MATTER OF THE ESTATE OF STANHOPE WOOD NIXON, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1961.
Decided January 19, 1962.
*451 Before Judges CONFORD, FREUND and LABRECQUE.
*452 Mr. A. Dudley Watson argued the cause for defendant-appellant Middlesex General Hospital (Messrs. R.E. & A.D. Watson, attorneys).
Mr. John J. Rafferty argued the cause for defendant-appellant St. Peter's General Hospital (Messrs. Rafferty & Blacher, attorneys).
Mr. John R. Kelly argued the cause for defendant-respondent Michael Nixon, by his guardian ad litem, Philip J. Woodward.
Mr. Terrill M. Brenner argued the cause for defendants-respondents, the unborn issue of Lewis Nixon.
Mr. David D. Furman, Attorney General of New Jersey, filed a statement in lieu of brief (Mr. Elias Abelson, Deputy Attorney General, of counsel).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This is an appeal from a judgment of the Chancery Division passing on a request for instructions by the executor of the last will and testament of Stanhope Wood Nixon, who died in January 1958. The court denied a request for sequestration, submitted by the remaindermen of the decedent's estate, of a life interest in a portion of the estate bequeathed to decedent's son, Lewis Nixon, which was renounced by the latter. The renunciation was in partial performance of a court-approved agreement of compromise of a claim against the estate by the administrator c.t.a. of the estate of Lewis' mother, decedent's first wife, for enforcement of an inter vivos agreement between the decedent and her that he would leave Lewis by will not less than a specified portion of his estate. The agreement had been breached by the subsequent making of the will here involved, which gave Lewis a lesser interest than that called for by the agreement. *453 The takers of the remainder after life trusts (hereinafter called "the Hospitals") contended below that the compromise payment out of the estate to Lewis (which was in the sum of $1,000,000) would have such an inequitable effect upon their interests, if coupled with an acceleration of the succeeding life interest given by the will to Lewis' son, Michael, as to warrant sequestering the renounced life interest and accumulating the proceeds thereof for a sufficient period of time to enable restoration to the corpus of the estate of the $1,000,000 paid out to Lewis (unless Lewis should sooner die). Judge Kingfield, sitting in the Chancery Division, held to the contrary and directed the acceleration of Michael's interest. Hence this appeal by the Hospitals.
The litigation derives from the following background. The testator and his first wife, Doris Ryer Nixon, who were married in 1917, had two children, Lewis and Blanche. In 1945 they entered into a written agreement concerning property matters in contemplation of a divorce which ensued shortly thereafter. Therein Nixon agreed that he would not thereafter reduce the interests of the children in his estate from the quantum of the provision made for them in a contemporaneously executed will which would have given each of them 30% of the estate outright. If one predeceased the testator without issue the other was to succeed to his or her share. In 1948 Doris Ryer Nixon died testate in California. In 1951 the testator made a new will, that now before us for construction, wherein, in violation of his agreement, he revoked the 1945 will and transmuted the children's bequests into 30% life estates, successive life interests going to their children, with remainder in fee (as well as the balance of the estate) to the Hospitals. These and other provisions of the will are more fully described hereinafter. The daughter, Blanche, predeceased testator without leaving children, a contingency which vested her testamentary interest in Lewis under the terms of the will. Testator was survived by his son, Lewis, *454 and by Lewis' only child, a son, Michael, aged 14 when decedent died.
After probate of the instant will in Middlesex County in January 1958 an action was instituted by John Drewen as administrator c.t.a. of the estate of Mrs. Nixon to enforce the property agreement on behalf of Lewis. The Supreme Court held the administrator to be entitled to bring the action. Drewen v. Bank of Manhattan Co. of City of N.Y., 31 N.J. 110 (1959). Thereafter, on notice to and with the consent of all parties in interest, the Middlesex County Court entered an order by which the claim against the estate was settled by the payment of $1,000,000 to Lewis in exchange for his renunciation of all interest in his father's estate. Then followed the present contested proceeding for instructions.
The will provides that the testator's entire residuary estate be held in trust for the lives of his second wife, Elizabeth Mulcahy Nixon, his children, Lewis and Blanche, and the last survivor of the lawful issue of his children living at the time of testator's death ("lawful issue" later defined to include only children and not other descendants of Lewis and Blanche), and 21 years thereafter, for the following uses: 30% of the net income each to Lewis and Blanche for life, payable quarterly, and upon the death of either to his or her children in equal shares, and if either Lewis or Blanche died without leaving issue or leaving issue all of whom died during the lifetime of the other, such share or shares to go to the other or his or her surviving issue; out of the remaining 40% of net income $5,000 annually to testator's wife for her life, the excess of such 40% of net income in equal shares to Middlesex General Hospital and St. Peter's General Hospital, both of New Brunswick, until the death of the wife, the entire $5,000 of net income to go to the Hospitals in equal shares after the death of the wife (apparently the rest of the 40% of net income was not distributable after the death of the wife, but this is not an issue here). At *455 the termination of the trust the entire trust corpus, together with any undistributed income, was to be paid over in fee to the Hospitals in equal shares.
The will provided that if any legatee, devisee or beneficiary of the trust should directly or indirectly contest or dispute the probate of the will or litigate any provision thereof, the legacy, etc., in his favor was to be revoked and given to the remaining beneficiaries, share and share alike. It was also provided that during the lifetime of Lewis, if it became a "matter of necessity to provide funds for the education or a start in life" of Michael, the executor and trustee was authorized in its sole discretion to apply out of income due Lewis any funds needed for such purpose.
The amount of the net estate is said not to be presently determinable with accuracy because federal estate taxes have not yet been fixed. The brief of the Hospitals estimates the probable net estate at about $4,000,000, producing net income at the annual rate of 3%. The appellate argument projected is that whereas the necessity of satisfying the claim of Lewis reduced the corpus, all of which will eventually go to the Hospitals, by $1,000,000, an immediate investiture of Michael into Lewis' 60% share of the trust income by the process of acceleration of his testamentary interest would give Michael $72,000 per year over the period of Lewis' life expectancy, a total of $2,244,240, or a net gain of $1,830,060 allowing for Michael's prospective loss of income attributable to the diminution of the trust corpus, because of the settlement payment, for the period after Lewis' death when Michael would have been entitled to the income had the testamentary plan not been disturbed. Further swelling Michael's prospective benefit from an acceleration, argue the Hospitals, would be the interest which the premature accumulation of income will produce. From these factual premises the Hospitals contend that the projected result would constitute an unfair and disproportionate burdening of their interests in the light of the augmenting of Michael's which *456 the testator would not have intended could he have envisaged what came about after his death. Their request below, repeated here, was that to prevent the foregoing asserted unfairness the renounced life interest of Lewis should be sequestered for a sufficient period of time to permit accumulation of $1,000,000 and restoration thereof to the corpus, thereby making whole the remaindermen and at the same time rehabilitating the yield payable on the account of the income interests created by the will. They qualified their position, however, by a concession that the sequestration should end upon Lewis' death, recognizing that the stated event would dictate succession of Lewis' children to the enjoyment of the income under the will.
Michael's guardian ad litem, on the other hand, argues that the normal rule of acceleration of testamentary interests behind a prematurely terminated life estate should obtain, the will and surrounding circumstances not reflecting any contrary intent by the testator. Counsel for the unborn issue of Lewis Nixon, who will also upon coming into being presumably benefit from acceleration if Michael's position is sustained, supported that position below and on this appeal. The Attorney General has submitted a statement in lieu of brief adopting the position of the Hospitals.
It is an established rule of construction of wills that a testator will be presumed to have intended to accelerate a vested future interest following a life estate when the life estate terminates by virtue of some unspecified contingency prior to the death of the life tenant, there being no controlling equity or indication that the testator would have otherwise intended in the particular case. 5 N.J. Practice (Clapp, Wills and Administration), § 242, pp. 569, 570 (1950); Ajax Electrothermic Corp. v. First Nat. Bank of Princeton, 7 N.J. 82, 86, 87 (1951). Conceding the general rule, the Hospitals argue that the circumstances here presented do raise a controlling equity in their favor and that it is sounder to infer that the *457 testator would have preferred the arrangement they propose than the state of affairs which would ensue from the acceleration of Michael's interest. In support of their contention the Hospitals cite a number of cases which apply a fairly generally recognized rule that where a testamentary life estate is renounced by the life tenant who is entitled by law to claim a larger interest in the estate, and does so, with the result of substantially disproportionate disturbance of other interests created by the will as drawn, the renounced interest will be sequestered and applied to reduce the injury to the adversely affected legatee or devisee. The normal concomitant of the application of the rule is denial of acceleration of an interest following the renounced life estate. Trustees of Kenyon College v. Cleveland Trust Co., 130 Ohio St. 107, 196 N.E. 784, 99 A.L.R. 224 (Sup. Ct. 1935); Cotton v. Fletcher, 77 N.H. 216, 90 A. 510 (Sup. Ct. 1914); In re Lonergan's Estate, 303 Pa. 142, 154 A. 387 (Sup. Ct. 1931); In re Forrest's Estate, 343 Pa. 59, 21 A.2d 917 (Sup. Ct. 1941); Firth v. Denny, 2 Allen 468, 84 Mass. 468 (Sup. Jud. Ct. 1861); Hinkley, Ex'r v. The House of Refuge, 40 Md. 461 (Ct. App. 1874); Sellick v. Sellick, 207 Mich. 194, 173 N.W. 609, 5 A.L.R. 1621 (Sup. Ct. 1919); Meek v. Trotter, 133 Tenn. 145, 180 S.W. 176 (Sup. Ct. 1915); St. Louis Union Trust Co. v. Kern, 346 Mo. 643, 142 S.W.2d 493 (Sup. Ct. 1940).
We are cited to no New Jersey case, and we have found none, specifically considering the rule relied upon by the Hospitals. This may be due to the comparatively limited dower rights of spouses in this State. The rule mentioned nevertheless appears to be sound in principle and it has been approved by the American Law Institute and scholars in the field. Restatement, Property, § 234, p. 983 (1936); 2 Powell, Real Property (1950), § 310, pp. 629 et seq.; Simes, Future Interests (1951), § 95, pp. 313, 314. Such variations as are to be found in the apparent results of the decided cases flow from differing *458 views as to (a) the required degree of distortion of the other interests affected by the claim against the estate of the renouncing party; (b) the relative status of the affected beneficiaries as special objects of the testator's bounty; and (c) any other indicia from the will and the surrounding circumstances as to the hypothesized intention of the testator were he confronted by the circumstances produced by the renunciation. Obviously, factors (a) and (b) are actually only theoretical aids toward ascertaining the supposed intent of the testator, but they are important in view of the difficulties ordinarily entailed in any inquiry into the testator's actual intention in this kind of problem.
Section 234 of the Restatement, cited above, reads as follows:
"When a will otherwise effectively creates prior and succeeding interests; and an attempted prior interest is renounced; and the renouncer effectively claims an intestate share; and there is no manifestation of a contrary intent, then (a) if the satisfaction of this derogating claim causes substantial distortion among the other testamentary dispositions, so much of the renounced interest as does not pass as part of such intestate share is sequestered for judicial distribution among the other testamentary distributees; (b) if the satisfaction of this derogating claim causes no substantial distortion among the other testamentary dispositions and acceleration of the succeeding interest is excluded by the manifestation of an intent contrary thereto, so much of the renounced interest as does not pass as part of such intestate share is sequestered for judicial distribution among the other distributees."
Of special relevance to the instant situation is the observation that the Restatement rule, mirroring the rationale of many of the cases, requires that it be "the satisfaction of [the] derogating claim" which causes the substantial distortion. The Restatement rule would not allow sequestration if there were no distortion ensuing as a causal result of the satisfaction of the derogating claim, but merely a benefit to the party enjoying acceleration upon a denial of sequestration, which does not also *459 benefit other beneficiaries of the will. The common sense of the distinction is obvious. There is always an advantage to the holder of an accelerated interest in the fact of its enjoyment earlier than would be the case if he were required to await the event (e.g., death of the life tenant) stipulated in the will. The mere fact that other beneficiaries do not obtain a comparable benefit has never been regarded as spelling out such substantial distortion of the respective beneficial interests as should in and of itself warrant denial of the acceleration, absent a reduction of the estate of the kind here involved. Such acceleration should therefore make no difference where reduction follows upon the demand of a refractory donee, if the demand does not otherwise produce disproportionate injury to other beneficiaries. This reasoning applies whether the accelerated interest is a fee or a lesser estate. As stated in the illustrative comments upon the Restatement section cited above, the fact that "the persons first taking under the limitations succeeding the renounced interests have the duration of their interests lengthened while the ultimate possible takers under these limitations have no such advantage" does not create a "substantial distortion" and sequestration will not be awarded by reason thereof. Restatement, op. cit., supra, at p. 994. Exemplifying the foregoing principles are In re Stieber's Estate, 139 Neb. 36, 296 N.W. 336 (Sup. Ct. 1941); In re Muskat's Will, 224 Wis. 245, 271 N.W. 837 (Sup. Ct. 1937); and In re Povey's Estate, 271 Mich. 627, 261 N.W. 98, 99 A.L.R. 1183 (Sup. Ct. 1935).
It is true that some of the decided cases decreeing sequestration have mentioned as an apparently contributing factor to the conclusion of substantial distortion the premature benefit which would otherwise accrue to the holder of an accelerated interest, but almost invariably there was present in these cases the independently determinative factor of disproportionate effect upon beneficiaries of the satisfaction of the demand of the renouncing party, in and of *460 itself. See In re Lonergan's Estate, In re Forrest's Estate, Sellick v. Sellick, and Meek v. Trotter, all supra. Apparently not requiring disproportionate effect upon the beneficiaries is Dowell v. Dowell, 177 Md. 370, 9 A.2d 593, 125 A.L.R. 1008 (Ct. App. 1939). Compare Cotton v. Fletcher, supra, wherein the court denied acceleration and ordered sequestration although the only disadvantage to the supposedly aggrieved party was that she would not share the pecuniary benefit which acceleration would confer upon the holder of the accelerated interest. However, a strong and perhaps controlling factor indicated by the opinion consisted of the status of the aggrieved party as a special object of the testator's bounty to whom he stood in loco parentis.
The applicable legal principles in aid of construction outlined above, which we approve, point in the direction of concurrence in the action of the trial court in this case. Assuming that the satisfaction by the estate of Lewis' claim is properly to be analogized to the typical situations discussed above as appropriate for consideration of the applicability of the rule of sequestration, we must look to the comparative effects upon all beneficial interests of the reduction of the corpus by the sum of $1,000,000, in and of itself. It is at once apparent that the adverse effects of the depletion are proportionate. The Hospitals as remaindermen sustain a diminution of corpus by about 20%, but the income recipients (other than Mrs. Nixon, whose situation is minimal) sustain by reason of such depletion exactly the same proportionate loss. The benefits to Michael or to yet unborn children of Lewis when they come into being, flowing from acceleration of their testamentary status as legatees of income, do not come out of any testamentary disposition in favor of the Hospitals and therefore do not prejudice any reasonable expectations on their part from the will. Acceleration of the income interests to testator's grandchildren should follow in the normal course of application of the rule of acceleration unless some controlling *461 equity or persuasive indication of a contrary intent by the testator is made to appear. We perceive none.
The Hospitals point to the in terrorem clause of the will as supporting their argument that the testator would have wanted sequestration in the present situation. They concede that Lewis did not violate that clause when his mother's legal representative brought the action which eventuated in the $1,000,000 settlement payment. But they argue that since the testator provided that a legal attack on the will by Lewis himself should result in the distribution of his income interest among the Hospitals, the grandchildren and the widow, equally, his probable intent upon confrontation with the instant situation would be, by analogy with the in terrorem direction, for distribution of the renounced interest to the Hospitals in common with the grandchildren. Preliminarily, it is to be noted that the contention proves too much. From the argument advanced, it would logically follow that the widow should take an equivalent share of the renounced income along with the Hospitals and grandchildren. The Hospitals do not so contend, and it is obvious that such a result would be absurd, the widow having been restricted to an annuity of $5,000. Moreover, the stipulated distribution upon violation of the in terrorem clause is in other respects quite different from the sequestration here sought.
We do not regard the in terrorem clause as indicative of the probable hypothetical intent of the testator, one way or the other. Concededly, he would probably have been distressed at the frustration of his plan to confine Lewis to a life estate in income, contrary to his agreement with the first Mrs. Nixon. But it does not follow from this that he would have wanted to deprive his grandchildren, especially the living grandson for whom he made particular precautionary provision in the will, of any part of the income their father was renouncing, and primarily to the supposed end of adding $1,000,000 to the $3,000,000 corpus *462 which the Hospitals will come into some 60 or 70 years hence.
Countering the constructional hypothesis of the Hospitals is the principle that in case of doubt a will should be construed to favor kindred as against strangers, Rosencrans v. Fry, 12 N.J. 88, 95 (1953), notably when there is other evidence of concern of the testator for such kin. The precautionary clause in the will for assuring Michael's education and "start in life" out of Lewis' income evidences such concern here. Moreover, that provision furnishes some reason to suspect the testator was not entirely confident of his son's disposition to take care of his child. Whether or not he was in fact justified in that regard, we can hardly assume that he would have wanted his grandchild solely dependent on his father's voluntary assistance during the years it will take to accumulate the sum sought by the Hospitals, as against the current availability of substantial income to assure the boy's welfare.
Insofar as the evidence before us nourishes anything more than speculation as to what the testator would actually have intended, we do not regard it as adequately supportive of the Hospitals' position.
The brief on behalf of the unborn children addresses itself to a contention apparently made by the Hospitals in the trial court to the effect that acceleration should be withheld because the grandchildren constitute a class which remains open under the will for the admission of any children Lewis may yet have in the future. However, the Hospitals have not made the point in their brief or upon oral argument. We take it as abandoned and give it no consideration.
At the oral argument, conceiving the possibility that the unborn children might be in a position of conflict of interest with Michael in that if they are born near the end of or after the period of suggested sequestration they would benefit from sequestration rather than acceleration, we inquired of their counsel why he supported Michael's *463 position. His response was that the chances favored earlier rather than later birth of any or most of such children and that the position he took represented his own best judgment as to what the overall interests of his wards required. We cannot quarrel with the exercise of his discretion. Nor can we say, having considered the posture of such potential children under the testator's plan, that it necessarily militates against the determination arrived at in the Chancery Division.
In view of the foregoing conclusions we need not consider the alternative argument advanced on behalf of Michael that the Hospitals are estopped from questioning acceleration by their concurrence in the settlement of the Lewis Nixon claim in the County Court without raising the issue of sequestration at that time.
Judgment affirmed.