WILLIAM D. WILLIAMS *v.* JOSEPH A. WILLIAMS *et al.*

AND

KATE D. JONES, next friend, etc., *v.* DAVID SEVIER *et al.*

1. WILLS. *Beneficial interest. Claims affecting the operation of a will.* It is a well established rule in equity, that a man shall not take any beneficial interest in a will, and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat or in any way prevent the full effect and operation of every part of the will.

2. SAME. *Claims of executors. Statute of limitations.* The will contained a clause which gave the executors power "to pay, if they see proper, just debts barred by the statute of limitations." This can only apply to claims of third parties against the estate, and not to debts or claims in favor of the. executors themselves. This would be to make the executors judges in their own cases.

3. SAME. *When and where claims of executors to be filed.* Executors have no right to waive any statute of limitations in their own favor, or either of them, without a most definite purpose expressed by the maker of the will. The representative must retain for his own debt within two years and six months, and this must be manifested, either by settlement in the county |court of his administration account, or some other unequivocal act of appropriation.

Williams *v.* Williams.

4. SAME. *Advancements in lifetime of testator. Interest on same.* Interest should be allowed on all advancements of money from the death of testator, where the money value is charged against the legatee in the will.

5. SAME. *Property advancements.* As to property advancements the rule is that the property, as it existed at the death of the testator, with the advancements, constitute the fund for division, and the children are entitled to share in the subsequent increase and profits in the proportion in which they were entitled to the *corpus.*

6. SAME. *Provision of forfeiture. Executors can not insist on a forfeiture.* Where a will contains a provision of forfeiture of all interest in the estate on the part of one who contests the will, and the will makes no gift over in case of forfeiture, then the executors can not insist on a forfeiture, if waived by the devisees and legatees. This would be to permit them to force a possible benefit on parties, who, having ample opportunity to assert their own rights, have declined to do so.

---

FROM GREENE.

---

Appeal from the Chancery Court at Greeneville. H. C. SMITH, Ch.

A. B. WILSON for complainant, Williams.

Jos. W. SNEED for complainant, Mrs. Jones.

H. H. INGERSOLL for respondents.

FREEMAN, J., delivered the opinion of the court.

Mrs. Catharine D. Williams died in Greene county, May, 1870, possessed of a large estate, both real and personal. She left a will disposing of the entire estate, with the exception of some small bequests, to her three sons, Joseph A., Thomas L. and complainant, William D., and her only daughter, Eliza D. Sneed, who had intermarried with the late Hon. Wil-

liam H. Sneed, of Knoxville. She appointed Jas. W. Deaderick, the present Chief Justice of this court, and David Sevier, Esq., her executors, who proved the will soon after her death, and entered upon the execution of its trusts. The administration was complicated with many difficulties calculated to delay a final settlement, growing out of litigation by which the property in many ways was sought to be affected. For these reasons, no doubt, a final settlement was delayed until in November, 1879. The original bill was filed in this case by complainant, W. D. Williams.

This bill has two leading objects: First, a construction of the will of Mrs. Williams in the several matters specified; second, to take the settlement of the estate from the control of the executors, and have a settlement of the same in the chancery court, with a general account of its administration. In addition, a claim is presented for $1,200 for personal services rendered by complainant for the executors in attending to the business of the estate, together with a specific relief, in reference to a tract of land sold by the executors, known as the College Farm, a portion of which was purchased by his wife.

The relief is sought in these matters, based on charges that the executors "have not sought the aid of a court of chancery to construe said will, but have construed it themselves," "and have failed to avail themselves of such evidence as would show the nature of the business or the proper meaning of the will, have given to some provisions a construction not intended by the testatrix, greatly to his prejudice, and

that he has appealed to them in vain" to give such construction as was evidently, as he thinks, intended.

In addition, it is charged that certain provisions of the will are nugatory and void as against public policy, requiring in substance that the legatees and devisees shall submit to the judgment of the two executors in all matters of construction and discretion in the settlement of the estate, and that if any one of them shall sue them for a construction of the will, or for matters confided to them by the will, such party shall forfeit the interest given to him or her, under the same.

The executors answer, giving an emphatic denial of all charges implicating them in any wrong construction of the will, or wrong conduct in their administration of the estate. They accompany their answer with schedules containing a complete showing of all the business done by them. The clear, business-like and satisfactory showing thus made, the work of David Sevier, who was the active executor in the conduct of the business, is most creditable, and deserves the commendation of this court.

The report of Referee Frizzell has succinctly stated the leading issues between the parties, collating the facts found by the Commission, with specific references to the record where they may be found, thus giving us efficient aid in the investigation of the complex record before us.

We will dispose of the questions presented in the order indicated, or as nearly so as may be found convenient:

First. The question of alleged erroneous construction charged in the bill.

By the fourth clause of the second codicil, of date February 17, 1867, the testatrix provides: "Having purchased at a chancery sale made since the date of my original will, the house and lot of my son, William D. Williams, in front of the court-house in Greeneville, it is my will that the said William D. Williams shall have the privilege of redeeming the same by paying the amount of purchase-money, with interest, to my executors and trustees at any time within twelve months from my death; or if they, within that time, can sell the property for more than the purchase-money and interest, they are to pay the *surplus* to him, and he is not to account for it in any manner. If not redeemed within twelve months, the property will form part of my entire estate, or if sold, the purchase-money paid by me, with interest, will be so considered."

An elaborate argument has been submitted to us, endeavoring to support the view that "purchase-money" in this fourth clause only meant two debts, Sevier's and Gass', which were paid by Mrs. Williams, the purchaser, and not the $5,025 for which she gave her note at the chancery sale. But on looking at the exceptions filed by complainant, we find nothing that points to this precise question. The question, however, does come into view in support of the contention made in the exceptions filed, and will be considered in the proper connection.

We will take up the exceptions of complainant as

they stand, and dispose of them: First. Because com-plainant is charged with the amount of the old note of $1,781.21, the proof in the case showing that the amount of this note was meant by Alexander Williams to be an advancement or gift to complainant, and advancements, with two exceptions specially made, are not to be charged. ·

This exception presents as its sole question the point as to whether the complainant shall be charged with the note referred to as an advancement or not, and puts the objection on the ground that it was given to him by his father, Alexander Williams, and the will excludes such advancements in express terms, except two instances, one to Mrs. Sneed, the other to complainant.

But the proof shows that this note was sued on by Mrs. C. D. Williams, attachment levied on the land referred to in clause four of codicil quoted above, sold November 9, 1866, for this and the debts of Sevier and Gass, and note of Mrs. Williams for $5,025, given for the purchase price, and then the land disposed of by said clause, or its proceeds. Mrs. Williams was the sole legatee of her husband and his executrix, and as such beneficial owner of this note. Complainant attempts to show that this judgment was only a means to cover up his property from judgments sought against him at the time, and was never intended to be enforced. But the decided weight of the proof is against this contention. The fact that Mrs. Williams retained this land, into which this judgment entered, and disposed of it and proceeds by-

will, requiring it to be redeemed by complainant by paying purchase-money with interest, or if sold for more than this, then complainant to have the surplus—if not redeemed, the property or its proceeds to go into her general estate, would be conclusive on complainant on this question. The testimony of Sevier, who was her confidential agent for many years before and up to her death, corroborates this view. We deem it well sustained by the weight of the whole record. If this sum was not recognized as a debt, it would have been natural to have said so in a will, and easy to have said that the Sevier and Gass debts were to be reimbursed to her estate, but not the debt on her son.

It is argued, too, that she gave complainant an order on Sevier for $3,000, part of the money for which the land was afterwards sold to Galbraith & Ingersoll, and thus showed her recognition of his right to the proceeds of the property. But it is clearly shown no such purpose existed, but the contrary. She required a receipt to be taken from complainant for this sum, showing that the amount was received, "not in payment or part payment of any claim or demand I may have against her, but as an advancement or loan by her to enable me to make a start in business, and I bind myself to account for the same hereafter when required to do so."

We need not discuss the position taken in argument, that the judgment in favor of Mrs. Williams is valid. It is unimportant in the view of the case we have taken. The principle, now well settled, as

stated by Chief Justice Shaw, in *Hyde* v. *Baldwin*, 17 Pickering R., 303, 308, as the established rule in equity, "that a man shall not take any beneficial interest in a will, and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat, or in any way prevent, the full effect and operation of every part of the will," is conclusive of the claim made by him in this case. The will treats this debt as part of her estate, or the property purchased in part with the judgment, and disposes of it. The claim of the complainant is directly in the face of this, and insists she was disposing of property which was his, charged only with the small debts of Sevier and Gass. See numerous cases cited in support of this rule by Pomeroy, Equity J., vol. 1, p. 515, note 1.

The next exception is, because complainant is held to be the principal in the note for $1,590.58, and testatrix only surety, the proof showing, as claimed, that complainant was the beneficiary in said note only to the extent of $290.89. The only distinct proof as to this sustains the decree of the chancellor.

The Referees hold W. D. Williams was principal on this note, his mother security, and charge him with this sum, but allow him to show such sums as were used for his mother in taking the account. The facts are substantially as stated by complainant, that in 1858 he had borrowed from Sneed $1,000, and given his note for it, but that it was to be used, and was used, for the benefit of his mother, except perhaps $290, or thereabouts. That afterwards he,

Mr. Sneed, and his mother met at Knoxville, in January, 1867, when this note was given, which is as follows :

We, or either of us, promise to pay W. H. Sneed $1,598.58, with interest from December 1, 1866. Value received. January 26, 1867.

WM. D. WILLIAMS,
C. D. WILLIAMS.

He claims this note was given in a settlement had at this meeting with Sneed, and included two other notes of complainant for $100 each, and perhaps some other matters. That he objected to giving his note at the time, as he claimed to have used but a small part of the $1,000 for himself, and had no access then to his papers, but it was suggested that all this could be adjusted between him and his mother, whereupon he signed the note, and gave him a statement of the settlement now shown in the record.

We think the Referees have reached the proper conclusion. It is conceded by Williams that he borrowed the money, the $1,000; the other notes included were his own. He claims the greater part of the $1,000 was used for his mother, and being allowed to show this, is all he can ask.

The next exception is, because certain sales of parts of what are known as the "college farm," a sale made for partition, are reported to be ratified. These sales were made to Joseph A. and Thomas L. Williams, two of the devisees. The objection is that they were but provisional, and in parol, and it is claimed in argument, the property shown to be worth more than was bid for it by purchasers. We think the sale was fair, and no inadequacy of price shown

at the time of sale. The executors had ample power by the will to make the sale, and in their answer affirm it. We see no cause to interfere with their judgment from the proof in this record.

The fourth exception, as to the old note and judgment on it being void, has been already disposed of.

The fifth exception is: "Because the claims of David Sevier, one of the executors, against the estate, of $726.85, $2,462, $884.18 and $2,000, as shown in the statement of the executor's account, are allowed, he having shown no retainer for these debts by settlement or otherwise, within two years and six months, nor indeed in ten years. For this reason the statute of limitations, it is insisted, bars these claims.

The Referees report in favor of allowing these claims, as they say "under the peculiar circumstances of the case, and especially under the power conferred upon the executors in the sixth clause of codicil No. 2, " giving them full power to settle all the business of the estate by compromise or arbitration, to release any debt or parts of debts, to take property in payment whenever they think it best, to dispose of the same, to pay, if they see proper, just *debts barred* by the statute of limitations."

We see nothing in these provisions to excuse the executors themselves from the obligations imposed by law as to debts due to themselves or either one of them. It is probable the clause referring to pay debts barred by statute of limitations could only apply to the general statutes of limitations, and not to the statute of two years and six months, requiring all

claims to be presented to the representatives within that period—a statute to have operation entirely after her death. Be this as it may, the provision can only be held to apply to the claims of third parties against the estate, and not to debts or claims in favor of the executors themselves. This would be to make them judges in their own cases. In the case of an entry-taker, whose duty it was to make entries for appropriation of vacant lands, it was correctly said by Judge Wright, delivering the opinion of this court, in *Egnew* v. *Cochrane*, 2 Head, 333, that he "could not make an entry in his own name before himself, because it is against public policy, and void upon common law principles." And so it is said by Blackstone, "that if a statute gives a man power to try *all* causes that may arise in his manor of Dale, yet, if a cause should arise in which he, himself, is party, the act is *construed* not to extend to that, because it is unreasonable that any man should determine his own quarrel." We could not, in view of these well-settled principles, as well as common justice and propriety, construe this clause as embracing the right of the executors to waive the bar of a statute of limitations in their own favor, without a most definite and unmistakable purpose expressed by the maker of the will. No such purpose is seen in the language quoted. We, therefore, hold the executors had no power to waive any statute of limitations in their own favor, or either of them, in this case. That the representative must retain for his own debt within two years and six months, and this must be mani-

fested, either by settlement in county court of his administration account, or in some other unequivocal act of appropriation, has been the settled rule in this State for many years: *Byrn* v. *Fleming,* 3 Head, 662; *Chestnut* v. *McBride,* 1 Heis., 394; *Shields* v. *Alsup,* 5 Lea, 508. This exception to the report must be sustained.

Exception sixth is: "Because compensation is allowed to the executors for services, when it is alleged they have unreasonably delayed the settlement of the estate."

The fact is that the delay is explained and met by the fact of repeated litigations that would have prevented a complete settlement of the estate, if attempted, together with the complication of the business. Under the enlarged discretion given the executors, together with the express provision that they should be liberally compensated, found in the will, nothing but a gross breach of duty would cut off compensation for such services as have been rendered. We see no evidence of this; on the contrary, perfect good faith, and more than ordinary care in the transaction of the business confided to them. This exception must be overruled.

We think the report of the Referees is correct in reversing the decree of the chancellor, dismissing so much of the answer of the executors, as was made a cross-bill. It was proper to file this in order to get possession of the land purchased by parol by complainant or his wife, which he was in possession of, and also to bring in the heirs or devisees of Mrs.

Sneed, which is all that is contained in said cross-bill. As to the bill of Mrs. Jones, next friend of her children, while strictly the proper practice would have been to apply under the facts to the chancery court, to be made parties to the bills already pending to settle the estate, instead of filing an original bill, as has been done; yet, inasmuch as they were necessary parties to that proceeding, and had not been so made, and were only so made by amendment after the bill had been filed, which has been consolidated with this case, we will allow it to be treated as equivalent to such petition, and not dismiss it, but allow them to remain as parties, and cost be taxed in final result on this view.

Exception 8 is because the report recommends the confirmation of the sale of the "college farm" to Joseph A. and Thos. L. Williams, and rescission of the one to wife of complainant. The sale being in parol, the executors having ample power to make it, having affirmed it as above, and having been perfectly fair, as we think, the report is correct. The disaffirmance is proper as to complainant's wife, the purchase-money never having been paid, and no ability to pay. The sale having been disaffirmed, the usual consequences follow of account for rents during occupation, to be met by taxes paid, if any, and betterments as far as land enhanced in value, if any. No one could interfere to prevent executors confirming sale, unless fraud or collusion was shown, and none can be made out in this case.

The exceptions of Mrs. Jones and children are next

to be considered. The first is disposed of as to right of executors to affirm and disaffirm sale of " college farm" tract of land. The second has nothing in it, since the other question is determined.

The third exception is, because the report recommends that interest should be allowed on advancements from death of testator.

This is correct as to all money advancements, or property advanced in the lifetime of the testator, with the money value charged against the legatee in the will. See 3 Yer., 122; *Johnson* v. *Johnson*, 13 Lea. As to property advancements, the rule is given in Judge Cooper's note to the case in 3 Yerger, approved in *McNairy* v. *McNairy*, Nashville, December, 1874, that the property, as it existed at the death of the testator, with the advancements, constitute the fund for division, and the children are entitled to share in the subsequent increase and profits in the proportion in which they were entitled to the *corpus*. These rules will serve to guide in the final settlement of this case.

The other exception is as to debts due David Sevier, barred by statutes of two and a half and seven years, and has been already disposed of.

Two questions only are raised by the exceptions of respondents, the executors and Joseph and Thomas L. Williams. The executors except because it is recommended that interest should be charged on assets from the time realized.

Interest on assets is a matter within the sound legal discretion of a court of equity: *Turney* v. *Williams*, 7 Yer., 213; 3 Heis., 637; 9 Heis., 821. The

grounds on which he is charged are such as those where he uses the money himself, or by long or improper delay in settlement, the use of the money may be inferred: 7 Yer., 214. Or negligence in laying out the money for the estate, or keeping the same an unreasonable time when no need exists to meet expected demands, or some misfeasance in its management by which it is imperilled. See cases cited, 1 Meigs' Dig., by Milliken, p. 80, 71, sub-sec. 2.

We have held there has been no unreasonable delay in the settlement in this case; that it was caused by circumstances over which the executors had no control. The assets, as far as we can see, have been realized as promptly as possible, and paid out to meet the liabilities of the estate, or to legatees.

On careful examination of the schedules showing collection and payments, it is seen the assets were paid out about as fast as received, probably not more retained in their hands at the time of filing complainant's bill than enough to compensate for services and expenses of settlement; at any rate there is no evidence of any misuse of the funds, or that they have been imperilled in any way. We do not think the executors, making so full and fair a showing of their accounts, should be charged with interest on assets, except any surplus that may be found in their hands at the time of filing the bill for an account, if any such can be shown, and from that period, or unless it can be shown, which is not done in this record, they have made interest or used the funds themselves.

The other and last exception presents the question, made in the answer of the executors, that complainant has incurred the forfeiture imposed by the terms of the will, by bringing his suit for a construction of the will, and wrongfully bringing in question the construction of the same made by the executors, under the broad power to construe it found in the codicil, a part of the will of testatrix.

The defense is made alone in the answer of the executors, but is not made in the answer of Thomas L. or Joseph A. Williams, or any other party.

The first question is, whether the executors can insist on this forfeiture, standing alone as trustees, having no interest whatever in the property, when the other devisees and legatees have waived whatever rights they might have had under the will to enforce the forfeiture, by failure to insist upon it in their pleading, or urge the enforcement of the forfeiture in any way, except by joining the executors in excepting to the report of the Referees on this ground.

The language of the particular clause imposing the restraint on her children is, " should any of my children seek to contest my will, or to disturb my said executors and trustees, by suits or otherwise, in the lawful exercise of their authority, then such child shall thereby forfeit any claim, legal or equitable, to any part of my estate. It is seen from this language that there is no gift over in case of forfeiture thus incurred, nor is it made part of any general residuary disposition. We think the failure of the other legatees and devisees to insist upon the forfeiture sug-

gested in the will is a waiver on their part of any right which they might have had to have claimed it. This being so, we see no principle on which the executors, who, so far as this question is concerned, are mere naked trustees with no beneficial interest whatever to be affected by enforcement of the forfeiture, or the opposite, can possibly exercise the right to enforce it in favor of and for the benefit of the real parties interested, who themselves have failed and refused to do so. This would be to permit them to force a possible benefit on parties, who, having ample opportunity to assert their own rights, have declined to do so. A case very closely analogous to this, would be of a conveyance in trust of property to pay a number of debts of the conveyor, of which there might be fraudulent or fictitious debts, which, under the conveyance, would share the fund. We have held that the *bona fide* beneficiary creditors might make the question, and on proof have such fictitious debts eliminated from the trust, based on their increased interest in the fund by doing so.

It could hardly be pretended, however, that the *bona fide* creditors refusing to do this, and submitting to being deprived of the benefit, could have it forced upon them by the trustee, who was merely the agent for the execution of the trusts of the instrument, with no beneficial interest to be served or injured. No difference in principle is seen between the case put and the case now in hand.

We, therefore, conclude the trustees cannot raise this question on these facts, and the beneficiaries have

George & Chapman v. Coal Company.

not done so, and so their exception cannot be sustained.

This disposes, we believe, of all the questions presented by the exceptions filed. A decree will be drawn in accord with this opinion. The costs of this court will be paid, one-half out of the fund in the hands of the executors, the other by complainant, and of the court below in the same proportion. Future costs to be adjudged by the chancellor. ⸗

The case will be remanded for the account in accord with this opinion.