Bible *v.* Marshall.

BIBLE *v.* MARSHALL.

*(Knoxville.    October  14,  1899.)*

1. HUSBAND AND WIFE.  *Resulting trust.*

When a husband obtains his wife's funds under an agreement to reinvest them in land for her benefit, and, with intent and purpose to perform this agreement, purchases land, paying the purchase price in part with her funds and in part with his own, but taking the entire title to himself, he holds the lands in trust for her benefit to the extent and in the proportion that her funds contributed to pay the purchase price. *(Post, pp. 325–328.)*

Cases cited: Pritchard *v.* Wallace, 4 Sneed, 405; Click *v.* Click, 1 Heis., 607; Pillow *v.* Thomas, 1 Bax., 120; McClure *v.* Doak, 6 Bax., 364.

2. SAME.  *Same.*

The wife's right to a resulting trust, otherwise attaching, is not affected by the husband's failure to obtain a valid deed or title to the land at the date of the transaction.  Her right attaches upon his obtaining title subsequently.  *(Post, p. 328.)*

3. SAME.  *Same.*

The wife does not acquire a lien upon the land for repayment of her funds, but takes an interest with her husband in the land, in proportion to the amount of the purchase price paid by her, where the land was purchased by the husband and deed taken in his name, under an express agreement with the wife that they should share it in the proportion that each paid on the purchase price.  *(Post, p. 329.)*

Cases cited: Turner *v.* Pettigrew, 6 Hum., 438; Ganaway *v.* Tarpley, 1 Cold., 580; Sandford *v.* Weeden, 2 Heis., 75; Ezell *v.* Wright, 3 Lea, 514; Gordon *v.* English, 3 Lea, 639.

4. SAME.  *Same.*

If the wife has a trust in lands held in her husband's name, that is enforceable against him, it will be enforced against his heirs, devisees, and personal representatives. *(Post, pp. 329, 330.)*

Bible *v.* Marshall.

5. WILLS. *Election.*

The statement in a will that one of the devisees has a specified interest in a tract of land standing in the testator's name, and therein devised, does not put the devisee to an election between his interest in this land and the benefits conferred upon him by the will. The mention of the devisee's interest is made obviously for the purpose of recognizing and excepting it out of the operation of the will. (*Post, p. 330.*)

Case cited: Colvert *v.* Wood, 93 Tenn., 454.

FROM COCKE.

·Appeal from Chancery Court of Cocke County. JOHN P. SMITH, Ch.

W. H. JONES, WASHBURN, PICKLE & TURNER for Bible.

H. N. CATE for Marshall.

CALDWELL, J. T. R. and Mary Marshall were married in June, 1888. At that time she owned a tract of land, inherited from her father, and a fund of $100 in the hands of her guardian. They soon agreed to sell her land, and invest her entire estate in another tract, and did so. They sold her land for $1,000, and gave $2,000 for the other tract. Her land and guardian fund, $1,100 in all, were received by the husband, and by him paid on the land purchased. He paid the other $900 from his own means. All

of this was done with the intention and under-standing that husband and wife should own the land acquired in that proportion in which they had paid for it, he nine-twentieths, and she eleven-twentieths.

The land was purchased from Thomas Bible, who, at first, simply assigned the deed received from his vendor, to T. R. Marshall, on the sup-position that more was not necessary. Some years thereafter, in 1894, T. R. Marshall made his will. The first clause directed the payment of his debts, and the second clause was as follows: "I devise and bequeath to my wife, Mary, the remainder of my property as long as she remains my widow, and my wife, Mary, having $1,100 invested in the real estate in the Thomas Bible farm, that is hers."

The draughtsman, while writing the will, told Marshall that he had no title to the land, having received only an assignment of the deed to his vendor. Thereupon, at the request of Marshall, the writer of the will procured a formal deed from Marshall's vendor. This deed was in ordi-nary form, and passed the legal title to T. R. Marshall alone.

Marshall was then in his last sickness, and soon died. He left his wife, Mary, their three children, and his child by a former marriage, sur-viving. His will was probated, and, after the pay-

ment of his debts, nothing of his estate remained except the land mentioned.

More than two years after Marshall's death his widow married C. A. Bible. Some time after her second marriage, she and her present husband brought this bill against her former husband's executor and children to set up a trust in the land to the extent of the $1,100 of her money used in its purchase, and to have the land sold and its proceeds applied in satisfaction of the trust. The Chancellor dismissed the bill. The Court of Chancery Appeals pronounced a decree, setting up the trust and adjudging complainant, Mary, the equitable owner of eleven-twentieths of the land, but refused an order to sell the whole land to repay her the $1,100. The decree of the Court of Chancery Appeals is clearly right.

*First.*—The facts heretofore recited show that Marshall reduced no part of the estate of his wife, Mary, to possession in the technical sense— that is, in such sense as to render it his own property—but that he received the whole of it as her trustee, with the agreement that it should be reinvested in the present land, and that he did so invest it, with the intention and understanding on the part of both that she should and did thereby become the owner of eleven-twentieths of the land as tenant in common with him, he furnishing the other nine-twentieths of the purchase money. The moment Marshall took the title to

himself the law raised a trust, as the equitable result of the surrounding facts, in favor of his wife, and made him her trustee to the extent that her funds were invested in the land. *Pritchard* v. *Wallace,* 4 Sneed, 405; *Click* v. *Click,* 1 Heis., 607; *Pillow* v. *Thomas,* 1 Bax., 120; *McClure* v. *Doak,* 6 Bax., 364; 2 Story's Eq. Jur., Sec. 1210; 1 Pom. Eq. Jur., Sec. 155; 2 Pom. Eq. Jur., Secs. 1031, 1037; 1 Perry on Trusts, Sec. 133.

*Second.*—This is rendered none the less so by the fact that Marshall did not actually acquire the title, as he supposed he did, at the time he made the purchase. The assignment by Bible of the deed of his vendor, was ineffectual to pass any title to Marshall, but that is immaterial, since the mistake was subsequently corrected by the execution of a formal deed. This deed was but a perfection of the purchase, a kind of *nunc pro tunc* performance of Bible's part of the contract. The payment of the wife's money upon the land was contemporaneous with and actually a part of the contract for the land, and her equitable right as beneficiary was in existence and in full force and virtue at the very moment the title was devolved upon her husband. It is to all intents and purposes a case of present, and not of past or subsequent consideration. The transaction was a single one, though divided into several parts, and when completed by a conveyance of the title, the trust arose at once.

*Third.*—The relief to complainant, Mary, is rightly limited to an adjudication of her equitable ownership of that proportionate part of the land represented by her money used in its purchase. She is not entitled to a decree for her money as such, nor to have the whole land charged with its repayment. The intention and understanding were that she and her husband should own the land as tenants in common, she eleven-twentieths and he nine-twentieths; and by that rule her interest must now be measured. The trust resulting in her favor is with respect to an undivided share of the land proportioned to her share of the price paid for it. 2 Pom. Eq. Jur., Sec. 1038. To allow her more would be palpably unjust to her husband's estate. The rule that the owner of a fund, invested by another person in the latter's name, may elect to take the property purchased, or to have it charged with a lien for repayment of the money (2 Story's Eq. Jur., Sec. 1211; Perry on Trusts, Sec. 128; *Turner* v. *Pettigrew,* 6 Hum., 438; *Ganaway* v. *Tarpley,* 1 Cold., 580; *Sanford* v. *Weeden,* 2 Heis., 75; *Ezell* v. *Wright,* 3 Lea, 514; *Gordon* v. *English, Id.,* 639), is most generally applied in cases of constructive trusts, where the investment is found to be wrongful, if not actually fraudulent. It has no application under the facts developed in this record.

*Fourth.*—The death of Marshall, the husband, does not impair his widow's rights, or preclude the

present action. The trust resulting in her favor was and is a valid, equitable estate in the land, and may be enforced against his heirs, devisees, and personal representative since his death, the same as it might have been enforced against him in his lifetime. 2 Pom. Eq. Jur., Sec. 1043.

*Fifth.*—The acceptance by the complainant, Mary, of the provision made for her in the will of her deceased husband does not estop her from making the present claim, because he did not attempt to devise her interest in the land. The doctrine of estoppel by election, as applied to dispositions by will, rarely finds place for enforcement, unless the testator has undertaken to dispose of some property belonging to the legatee or devisee against whom the doctrine is invoked. The rule requiring election is generally based upon the fact that the testator intended to dispose of property not his own and give its owner something else. 2 Jarman on Wills (R. & T.), pp. 1, 2, 3; 1 Pom. Eq. Jur., Sec. 472; 2 Story's Eq. Jur., Secs. 1076, 1077; Pritchard on Wills and Adm'n, Sec. 473; 11 Am. and Eng. Ency. Law (2 Ed.), pp. 65, 66, 67; *Calvert* v. *Wood,* 93 Tenn., 454.

Let the decree of the Court of Chancery Appeals be affirmed.