# DUNCAN v. PEEBLES.—192 S. W. (2d) 235.

Western Section.   July 23, 1945.

Petition for Certiorari denied by Supreme Court, January 11, 1946.

Albert G. Riley, of Memphis, for complainant.

Canale, Glankler, Loch & Little, of Memphis, for appellee.

BAPTIST, J. The bill was filed in the Chancery Court of Shelby County by the complainant below, Bessie E. Duncan, against the defendant below, Fred J. Peebles, individually, and as executor of the estate of Lida Kurtz Billingsley, and in which she claimed the title to certain personal property which is specifically described in the bill, consisting of jewelry, bonds and stocks.

It alleges that the defendant was appointed executor of the will of Lida Kurtz Billingsley, and that the property in question has come, or should have come, into the possession of the defendant; that the complainant is a beneficiary under said will, having been devised certain real estate, called the homeplace, at 114 Pontotoc Avenue in Memphis.

That in his lifetime Daniel Kurtz, husband of the testatrix, on September 5, 1905, made a gift to his wife, the testatrix and the complainant of said real estate and

personal property located at 114 Pontotoc Avenue, together with jewels bought by him evidencing the same by a written instrument.

That the testatrix recognized the gift of the said property to be to her for life and recognized the complainant's right to said property at her death.

The complainant's claim to the personal property in question is based upon the written instrument mentioned above and which is as follows:

"Memphis, Tenn. September 5-
1905

We the undersigned do agree among ourselves to the following terms and conditions:—My wife Lida Gates Kurtz is to have Stocks & Bonds; Real estate and personal property located at 114 Pontotoc St., in the city of Memphis, Tenn. and all jewels bought for her by myself Dan Kurtz, until, her death, at which time all the above are to be given in full to have & to hold or dispose of as she may see fit to my niece Bessie Kurtz Eberwine, of Evansville, Ind., who has so lovingly helped to care for and comfort me during my last illness.

Signed   Lida G. Kurtz
Daniel Kurtz
Bessie Eberwine

I acknowledge the attached agreement and the three signatures are true and legitimate.

Signed   Lida K. Billingsley"

The contention of the complainant is that this instrument created a life estate in the property in Lida G. Kurtz, with vested remainder in the complainant.

The answer of the defendant admitted that a portion of the personal property described in the bill came into his possession, but denied that he had received all of it.

It is alleged that the writing relied on by the complainant created no title in her to the property.

It is admitted that the complainant was a beneficiary under the will of Lida Kurtz Billingsley.

It is alleged that the complainant was also a beneficiary under the will of Daniel Kurtz, having been devised the sum of $2,000, and that she accepted the same; that the will of Daniel Kurtz gave to his wife, Lida G. Kurtz, the property now claimed by the complainant; that having accepted the provisions made for her in the will of Daniel Kurtz she is now estopped to claim the property given by Daniel Kurtz to his wife, Lide G. Kurtz, under the provisions of his will.

At the close of the complainant's proof the defendant moved the Court to withdraw the issues from the jury and enter a decree in his favor.

The motion was allowed and a decree entered dismissing the complainant's bill.

The material parts of the Chancellor's opinion are embodied in the decree which is as follows:

"And the Court thereupon, on the evidence introduced, ordered, adjudged and decreed, as follows:

"That the jewelry described in the original bill, title to which was claimed by complainant in this cause, was owned in complete ownership by Lida Kurtz, wife of Daniel Kurtz, at and before the death of the said Daniel Kurtz; that, therefore, the said Daniel Kurtz had no right and was unable to make any gift of said jewelry to complainant herein and that the instrument of writing sued on herein, dated September 5, 1905, properly construed was, as to said Lida Kurtz, merely a promise by her to make a gift and, being without consideration, was, therefore, unenforcible. That, in addition to the foregoing reason, the complainant was named as a de-

visee in the will of Lida Kurtz Billingsley, deceased, she having been devised the house and lot known as premises 114 Pontotoc Avenue, Memphis, Tennessee, and having taken said real estate under said will, is estopped to claim the jewelry and other personal property described in the bill which was bequeathed to the defendant under the residuary clause of said will.

"That the complainant was named as a legatee in the will of the said Daniel Kurtz, deceased, and complainant having accepted the provision made for her in said will, is estopped to claim title to the stocks and bonds owned by the said Daniel Kurtz at the time of his death and bequeathed to his wife, the said Lida Kurtz, which said stocks and bonds are described in the original bill in this cause.

"That the complainant, having taken the real estate owned by the deceased, Lida Kurtz Billingsley, at the time of her death and known as premises 114 Pontotoc Avenue, Memphis, Tennessee, under the terms of the will of the said Lida Kurtz Billingsley, deceased, is estopped to claim title to any of the furniture, furnishings or other personal property located in said house, same having been devised to the defendant herein under the residuary clause of the will of said decedent.

"It is, accordingly, ordered, adjudged and decreed that the defendant, Fred J. Peebles, acquired title to all of the personal property described in the original bill filed in this cause, including the furniture, furnishings and personal property located in the house known as premises 114 Pontotoc Avenue, Memphis, Tennessee, which the said Lida Kurtz Billingsley owned at the time of her death and title to which was claimed by the complainant under said instrument of writing dated September 15, 1905, said defendant having acquired title thereto as the

residuary legatee under the will of the said Lida Kurtz Billingsley.''

From this decree the complainant has appealed and assigned errors.

The written instrument executed by Lida G. Kurtz, Daniel Kurtz and Bessie Eberwine, dated September 5, 1905, and under which the complainant claims title to the property in question, has been set out.

Previously on July 18, 1905, Daniel Kurtz had executed his will. He died in Shelby County in November 1905, and the will was offered for probate in the same month.

The parts of the will material in this case are as follows:

''Item I. After the payment of my debts, I devise my interest in a house and lot on Pontotoc Street, No. 114, to my wife, Lida Gates Kurtz.

''Item II. I give her all my stocks and bonds of which I may die possessed, and in addition thereto, ten thousand ($10,000.00) in cash.

. . . . .

''Item V. I bequeath to my nephews and nieces, of Evansville, Indiana, the following amounts: To Miss Bessie Eberwine, Two Thousand Dollars ($2000.00); to Alberta Eberwine, Two Thousand Dollars ($2000.00); to William Eberwine, Two Thousand Dollars ($2000.00); to Phillis Eberwine, One Thousand Dollars ($1000.00); to Mrs. Warren, One Thousand Dollars ($1000.00); to Mrs. Allen, One Thousand Dollars ($1000.00); to Mrs. Fannie Lavalle, One Thousand Dollars ($1000.00).''

Relative to the bequest to her in the sum of $2,000 the complainant testified that she did not receive but a small part of the bequest, the reason being that the executor was young and inexperienced and made a poor job in the administration of the estate; that she accepted the pro-

visions of the will and got as much of the money as she could get out of the executor.

After the death of her husband Mrs. Kurtz continued to live in the home on Pontotoc Avenue which had been devised to her by the will of Daniel Kurtz and continued in possession of the personal property including the jewelry and household furniture, together with the stocks and bonds devised to her by her husband's will.

Later Lida G. Kurtz was married to one George Billingsley with whom she lived until his death in 1936.

During the last-mentioned marriage she conveyed to Billingsley the home on Pontotoc Avenue, but later procured a reconveyance of the property from him to her. She also transferred to him title to certain stock in the State Savings Bank, but later he transferred the title in said stock from him to her. She disposed of the City of Memphis Water Department bonds devised to her under the will of Daniel Kurtz.

In October 1942 Mrs. Lida Kurtz Billingsley died and left a will the parts of which material to this case are as follows:

"Item 2. I give my home at 114 Pontotoc Avenue, corner Mulberry Street, in Memphis, Tennessee, to my niece, Bessie Eberwine Duncan, 126 S. W. Sixth Avenue, Miami, Florida.

"Item 3. I have already given my house and lot situated at 306 Beakes St., Ann Arbor, Michigan, to my sister Bernice Biddle Grams, per deed conveying same, and I hereby ratify and confirm said transfer and gift. I also give to my said sister my diamond ear-rings and all my personal wearing apparel.

"Item 4. I give my diamond ring set between sapphires to my grandniece, Mary Lee Billingsley, 880 Stonewall, Memphis, Tennessee.

"Item 5. I give all the rest and residue of my estate to my beloved friend and benefactor, Fred J. Peebles, 839 Maury St., Memphis, Tennessee. I further forgive and cancel all debts of the said Fred J. Peebles owing to me or to my estate at date of my death. I also hereby ratify and confirm power of attorney and trust agreement between myself and said Fred J. Peebles, dated May 30, 1939, and recorded in record book No. 451, page 116, in the° Register's Office of Shelby County, Tennessee, and changes and amendments to said power of attorney and trust agreement dated Sept. 8th, 1942, and recorded in Record Book No. 452, page 300, in the Register's Office of Shelby County, Tennessee.

"Item 6. I hereby nominate and appoint the said Fred J. Peebles, as and for executor of this my last will and testament, and expressly waive the giving of bond by my said executor. I also desire and direct that said executor be relieved of filing any inventory of my estate or of making any report in connection therewith to any court whatever.

"In Witness Whereof, I have signed, sealed, published and declared this instrument as and for my last will and testament, this Oct. 9, 1942."

The will was probated October 31, 1942.

The jewelry involved in the case consists of that bought by Daniel Kurtz for his wife. This appears from the instrument under which Mrs. Duncan claims and from her testimony. This jewelry or such parts of it as she had not disposed of remained in the wife's possession until her death in 1942.

During the time she was the wife of George Billingsley and in December 1935 she wrote a letter to the complainant, Mrs. Duncan, and from which we quote: ". . . Bessie—I may have trouble about property and I want

to ask you if you still have the paper you claimed to have about my home 114 Pontotoc reverting to you at my death. I hope you have, for I surely intend if I get it back to will it to you. I have an Attorney to take care of my rights. Another important question—have you the date of my going to the Hospital to be operated on for Gall-stones? If you have please send it to me.''

Again on June 14, 1936, she wrote to Mrs. Duncan '':that I have made my will and you will get what your uncle wanted you to have and some more if I don't have to sell them to live on.''

Again on July 1st she wrote to the complainant as follows: '':This has been the hottest day I believe I every lived through. The 1st of course brought bills also a small dividend more than enough to pay one bill. Then I cut my coupons off from my 3 little water Bonds. George stole the other 7. I should think I would grieve for him—Monday being a Holly day I wanted to attend to this today—had I any idea it was so hot I would not have ventured out.''

The complainant contends that the Chancellor was in error in holding that the instrument relied on was a promise to make a gift and being without consideration was unenforcible.

There is no contention that a consideration passed from the complainant to either Daniel Kurtz or his wife, Lida G. Kurtz.

In the case of Scott v. Union & Planters' Bank & Trust Co., 123 Tenn. 258, 271, 130 S. W. 757, 761, it is said: ''In section 1149 of the volume of Mr. Pomeroy already quoted, the author, returning to the subject of 'delivery,' says: 'It is essential to the validity of a donation that the thing given be delivered to the donee, or to his use. Without a delivery the transaction would only amount to

a promise to give, which, being without consideration, would be a nullity. The intention to give must be accompanied by a delivery, and the delivery must be made with an intention to give. . . . The delivery may be made directly to the donee, or to an agent or trustee on his behalf; but not to an agent of the donor. It may be actual . . . or constructive. A constructive delivery must be something which completely terminates the donor's custody and control of the article donated and which places it wholly under the donee's power, and enables him without further act on the donor's part to reduce it to his own manual possession. All the cases which hold a constructive possession to be good, whatever be their special circumstances, will be found to conform to this criterion; that the donor parts with all control and power of exercising dominion, while the donee obtains the exclusive power of taking physical possession and custody of the article, so that it is in fact placed under his sole dominion.' ''

There was no delivery, actual or constructive, of the property mentioned in the agreement of September, 5, 1905.

Daniel Kurtz remained in possession and control of that part of the property owned by him until his death. By his will previously executed and which was not changed or modified, by codicil or otherwise, he revoked the provisions of the instrument relating to his property.

Lida Gates Kurtz also remained in possession of that part of the property belonging to her until her death nearly forty years later, and by her will revoked the provisions of the instrument relating to her property.

The instrument in question does not transfer or convey the property to the complainant, nor to Mrs. Kurtz as trustee for the complainant. The agreement was that

Lida G. Kurtz was to have that part of the property, not belonging to her, until her death and then provides "at which time all the above are to be given in full . . . to my niece Bessie Kurtz Eberwine." As stated there was no consideration for the promise from either Mr. and Mrs. Kurtz.

If at the time of the execution of the agreement the property of Daniel Kurtz had been delivered to Mrs. Kurtz, a question of parol trust might arise. This was not done. Daniel Kurtz remained in possession and control of his property until his death and by his will left the property in fee to his wife, and made another provision for the complainant.

Thus his construction of the instrument was not that the complainant had a vested remainder in the property.

Mrs. Kurtz lived for nearly forty years after the death of Daniel. She remained in possession and control of Daniel's property during that time, handling and disposing of it as she saw fit. As stated she conveyed the home to her second husband, later obtaining a reconveyance. She remained in possession and control of the jewelry she owned until the time of her death and by will left a part of it to a sister and the rest to the defendant by residuary clause.

In the letter of December 6, 1935, she states that if she got her property back she intended to will it to the complainant.

She transferred the bank stock as stated and disposed of all the Water Department bonds.

In her letter of June 14, 1936, she advises the complainant that she has made her will and that complainant will receive certain property if she did not have to sell it to live on.

It is evident that the widow of Daniel Kurtz thought she had complete title to the property and that the instrument or agreement did not create a vested remainder in the complainant.

The complainant knew that during the years the articles of property were in her possession, Mrs. Billingsley exercised the right to sell or dispose of the property as she saw fit, and that she did so sell or dispose of the property at different times. With this knowledge she stood by for many years and voiced no objection to the sale or disposition of property in which she now claims a vested remainder.

■ "The interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the court and to this end not only the acts, but the declarations of the parties may be considered." Canton Cotton Mills v. Bowman Overall Co., 149 Tenn. 18, 29, 257 S. W. 398, 402.

■ We think the acts of the three parties to the instrument sued on showed their construction of it to be that it was not a vested remainder created in the complainant, but was merely a promise or agreement that the property should be given to the complainant at the death of Lida G. Kurtz.

The complainant contends the Chancellor was in error in holding the doctrine of estoppel and election were applicable to the complainant and prevented her from taking the benefits of the alleged deed of gift and that since she took the bequests under the wills of Daniel Kurtz and Lida Kurtz Billingsley she elected to and was estopped from claiming the benefits of the alleged deed of gift.

The complainant's contention is that she was not put to an election because she had a valid claim or interest

in the property before the death of the testator; in other words that the doctrine of election does not apply except in case of property in which the testator has no interest.

In support of this contention complainant cites the cases of Rowlett v. Rowlett, 116 Tenn. 458, 95 S. W. 821; Walker v. Bobbitt, 144 Tenn. 700, 88 S. W. 327; and Gusler v. Miller, 78 Tenn. 90.

In the case of Rowlett v. Rowlett the widow sued the executor of the estate of her deceased husband for the proceeds of exempt property sold by him. It was insisted that the widow was put to an election because the will purported to dispose of the whole estate, including exempt property; that she took under the will and was estopped from claiming the exemption. The Court held this to be an erroneous view, that, under the statute, exempt property did not belong to the deceased husband's estate and could not pass under the will; therefore, the widow was not put to an election.

In the case of Walker v. Bobbitt it was held that, where the testator had an interest by entireties in certain real estate, and made a will by which he attempted to dispose of the property, that is, of the land itself, the widow was not estopped to claim this land as survivor, although she accepted other provisions made for her by the will.

In the case of Gusler v. Miller, a tract of land was devised by the will of a mother jointly to several children. One of the children sold his interest, and later brought a contest of his mother's will. The other eight children sought an injunction on the ground that by selling the land he had elected to stand by the will. The Court found that he had sold his interest on account of his poverty and before he had knowledge of the undue means by which the will had been obtained, therefore the doctrine of

election did not apply. The substance of this opinion is that a person cannot be put to an election in absence of knowledge of the facts.

In the case of Miller v. Fidelity Bankers' Trust Co., 164 Tenn. 149, 46 S. W. (2d) 516, 518, in which the Court adopted the opinion of Presiding Judge Faw, of the Court of Appeals, the testator made provision for his wife but left his home in Rogersville to a nephew. The widow sought to have this property set aside to her as a homestead and to also take the provision made for her by the will. The Court held that she was required to elect.

The opinion contains a full and learned discussion of the rights of homestead.

In the course of the opinion it is said:

"The general rule on the subject of 'election between homestead rights and gifts by will' is stated in Page on Wills (1st Ed.), sec. 716, p. 856, as follows:

" 'Where testator has so disposed of his property by will that some provision of the will will be defeated if the widow is given both the property devised to her by will and the homestead, the widow must elect between her rights under the homestead law and her rights under the will.' "

In discussing the case of Walker v. Bobbitt, supra, the opinion says: "The case of Walker v. Bobbitt, 1905, 114 Tenn. 700, 88 S. W. 327, did not involve the question of an election by the widow between homestead (or dower) and a provision for her in her husband's will. The land there involved was held by the husband and wife as tenants by the entirety, and the court held that the doctrine of election could not be invoked in such case. The

statement in that opinion, that the doctrine of election is not applied save in a case of property in which the testator has no interest, should be confined to the case there in judgment and analogous cases. Louisville & N. Railroad Co. v. Davidson County Court, 1 Sneed 637, 695 [33 Tenn. 637, 695], 62 Am. Dec. 424; Cohens v. Virginia, 6 Wheat. 264, 399, 5 L. Ed. 257; Blacks Law of Judicial Precedents, sec. 11, p. 49. Certainly the able and distinguished jurist who prepared the opinion in Walker v. Bobbitt was not speaking with reference to the multitude of cases wherein the courts have applied 'the doctrine of election' so as to require a widow to elect between the provision made for her by her husband's will and homestead or dower (or both) in the lands of her deceased husband, many of which cases are digested in 22 A. L. R, pages 437-524.''

On this question both parties cite and discuss the latest opinion of the Supreme Court in the case of Elmore v. Covington, 180 Tenn. 128, 172 S. W. (2d) 809, 810.

The complainant's position is that the case has no application to the facts of the instant case, the defendant's contention is that the cases are analogous on the facts.

The facts in the case of Elmore v. Covington, Opinion by Justice Neil, are that the brothers and sisters of Mrs. Lizzie Elmore Carroll filed a bill against the brothers and sisters of J. A. Carroll, husband of Mrs. Carroll, deceased, for breach of contract to make a will in favor of the complainants. Mrs. Carroll died intestate and the complainants, as heirs at law, acquired two houses and lots that formerly belonged to Mrs. Carroll. The complainants deeded the houses and lots to J. A. Carroll upon an alleged agreement that J. A. Carroll would execute a will devising and bequeathing to them a share in his estate

equal to that given his own brothers and sisters. J. A. Carroll died and left a will in which he devised to the complainants the houses and lots and bequeathed to each of them $100 in cash.

By amendment to their bill the complainants alleged that they did not intend by the original bill to release what was devised to them by the will.

A motion to require the complainants to elect whether they would proceed with their claim or take under the will was sustained by the Court, from which the complainants appealed.

In the instant case the complainant contends that Mrs. Billingsley had a life estate in the property, with vested remainder in the complainant and that the property did not descend under the will; in other words, that the will undertook to dispose of property belonging to her.

Quoting from Elmore v. Covington:

"The testator in the instant case did not dispose of any property that belonged to these complainants. While our decisions uniformly hold that the doctrine arises where the testator gives away property belonging to a legatee or devisee; we find ample authority to sustain the contention that it also applies where one asserts conflicting rights to property, i. e., claiming under the will and making a separate claim against the estate. The cases cited by counsel, Bible v. Marshall, 103 Tenn. 324, 52 S. W. 1077; Battle v. Claiborne, 133 Tenn. 286, 180 S. W. 584; and Colvert v. Wood, 93 Tenn. 454, 25 S. W. 963, are not in conflict with this view. In applying the doctrine of election, which often involves the question of estoppel, the courts have not limited it to rights or interests that are wholly recognized or established.

"If the complainants are permitted to claim their devise and the bequests and also prosecute a suit for damages for breach of contract to make a will, the result will be to wholly nullify the will of the testator. It is undoubtedly true that a creditor of an estate, who is also a beneficiary under a will, may prosecute his claim without surrendering his bequest where the bequest was not intended as a payment of the debt; but in the instant case complainants are retaining benefits under the will and at the same time suing the defendants because the value of their devise and bequests is not as great as what they had hoped to receive.

"Mr. Pomeroy in discussing the equitable doctrine of election says:

" 'This doctrine involves the notion that no man can claim inconsistent rights with regard to the same subject, and that anyone who asserts an interest under an instrument is bound to give full effect to the instrument; he cannot both accept and reject it, or avail himself of its benefits as to a part and defeat is provisions as to other parts.' Pomeroy's Equity Jurisprudence, sec. 395.

"It is true the author suggests that it arises where the donor devises a property or interest that belongs to the beneficiary.

"Now the inconsistent rights of complainants relate to the will of the testator and his failure to make a will devising them a greater interest in his estate. If the doctrine of election does not apply in these circumstances, the complainants will be enabled to use their interest to finance a lawsuit against the estate of decedent to the possible, if not probable, destruction of the rights and interests of others. This appears to us to be in violation

of the well known maxim 'He who seeks equity must do equity.' "

The Court then quotes from a Washington case, Parkes v. Burkhart, 101 Wash. 659, 172 P. 908, as follows:

" 'Appellant is seeking to take under the will and at the same time set up a right or claim which, if well founded, would defeat the will in so far as it affects respondents. . . . It is too well settled that one who accepts a benefit under a will must accept the whole will and ratify every portion of it.'

"The principle thus announced follows our own case of Williams v. Williams, 83 Tenn. 438, 445, approving Hyde v. Baldwin, 17 Pick. (Mass.) 303, wherein it was held as an established rule in equity 'that a man shall not take any beneficial interest in a will, and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat, or in any way prevent, the full effect and operation of every part of the will.' "

In the instant case the complainant elected to take under the will of Daniel Kurtz a bequest of money which was not given to her in the alleged deed of gift. This same will under which she elected to take devised in fee to the widow the identical property set out in the alleged deed of gift. In complainant's brief it is stated: "The answer filed by the defendant did not raise the issue of estoppel by election under the Billingsley will and expressly confined it to an estoppel under the Daniel Kurtz will", undertaking thus to revoke the rule that an estoppel must be pleaded. We treat this as relating to the assignment of error that the Chancellor erred in holding that the complainant was estopped to claim property described in

the deed of gift because she was named as a devisee in the Billingsley will and took the real estate under the will.

"The rule requiring estoppel to be specially pleaded is subject to the exception that in cases where the estoppel appears in the pleadings of the adverse party, such estoppel need not be specially pleaded." 19 Am. Jur. p. 838, sec. 182.

In Chandler v. Roddy, 163 Tenn. 338, 356, 43 S. W. (2d) 397, 403, the Court says: "It is said by the state that this estoppel is not sufficiently pleaded by the defendants to the petition. The facts, however, constituting the estoppel, appear on the face of the petition." And: "It is not necessary to plead an estoppel eo nomine. If the facts constituting an estoppel appear in some pleading, that is sufficient to permit the defense." Boone v. Citizens Bank & Trust Co., 154 Tenn. 241, 290 S. W. 39, 50 A. L. R. 1369; Maryland Casualty Co. v. McTyier, 150 Tenn. 691, 266 S. W. 767, 48 A. L. R. 1168.

In complainant's bill in the instant case she alleged that she is a beneficiary under the will of Mrs. Billingsley by having been devised the homeplace, and also seeks a decree vesting in her the personal property described in the bill and which was devised to the defendant and other beneficiaries. Thus it is shown that she accepts the provisions of the will in her favor and is attacking other provisions of the will.

We are of the opinion that the estoppel appears in the complainant's bill and the rule is therefore not applicable in this case.

We find no error in the Chancellor's conclusion and decree. The assignments of error are overruled and the decree of the Chancery Court dismissing the bill is affirmed.

The complainant will pay the costs.

Anderson, P. J., concurs.

Ketchum, J., dissents.

Ketchum, J. (dissenting).

I feel obliged to dissent in this case.

. It is true, as the Chancellor said in his opinion, that the agreement of September 5, 1905, was inartificially drawn, but its meaning is clear. It is in the nature of a family agreement between Daniel Kurtz and his wife, Lida G. Kurtz, on the one part, and their favorite niece, Bessie Eberwine, on the other whereby Kurtz and his wife agreed that Mrs. Kurtz was to have the house and furnishings, and his stocks and bonds, and the jewels which Kurtz had given her, for her lifetime, and that on her death, "all the above are to be given in full, to have and to hold or dispose of as she may see fit to my niece Bessie Kurtz Eberwine, of Evansville, Ind., who has so lovingly helped to care for and comfort me, during my last illness." It thus appears from the instrument itself that it was made during the last illness of Daniel Kurtz and in contemplation of his death and in consideration of the services rendered by the niece at the time when both Kurtz and his wife so needed her loving care and comfort. The language used was appropriate language to vest a life estate in the property, real and personal, in Mrs. Kurtz with a remainder in fee in the niece, Bessie Eberwine. Although he had previously given the jewels to his wife, and they were hers absolutely, her joinder in the agreement was an acquiescence in the limitation of the gift to her to a life estate and a gift of the remainder interest therein to Bessie.

The Chancellor held that the agreement did not create a present gift of the property, but was merely a promise to give which was not binding because there was no con-

sideration for it; and that he made a different disposition of it by his will. To this I cannot agree. It appears from the agreement itself that Daniel Kurtz realized that he would never recover from his illness and he was winding up his earthly affairs. There are no words indicating a promise to make a gift in the future, but a present agreement on the part of himself and his wife that Mrs. Kurtz should have the property for life and that Bessie should have the remainder interest therein. Bessie's services constituted an ample consideration for the gift. It was not necessary that the agreement should be supported by a consideration equivalent in value. The services rendered and her loving care and comfort during his illness constituted a sufficient consideration for the agreement. 12 Am. Jur., Contracts, sec. 80.

In the prevailing opinion it is said that "there is no contention that a consideration passed from the complainant to either Daniel Kurtz or his wife, Lida G. Kurtz." But as we have already shown the instrument on its face shows that it was made in consideration of the niece's loving care and comfort to Kurtz during his last illness. And the proof shows the strong bond of affection that existed between Bessie and her uncle and aunt which lasted not only during the lifetime of the uncle, but until the death of the aunt some forty years later; and of all the sisters and nephews and nieces of Daniel Kurtz mentioned in his will, this niece is the only one shown to have visited in his home or done anything for his comfort during his illness. The complainant who lived in Evansville, Indiana, made 'five or six long visits to them, and during her uncle's last illness she was there for three or four months hoping to nurse him and doing what she could to comfort and help in caring for him.

It is also said in the prevailing opinion that "There was no delivery, actual or constructive, of the property mentioned in the agreement of September 5, 1905." The delivery of the agreement itself was a constructive delivery of the property described in it. The agreement by its terms vested a life estate in the stocks and bonds, the real estate and the jewels in Mrs. Kurtz for life with remainder to Bessie. It is not disputed that Mrs. Kurtz had the possession and enjoyment of it during her lifetime. It was not necessary that Bessie should have possession during Mrs. Kurtz's lifetime.

"The possession of the life tenant is the possession of the remainderman where a legacy is to one for life with remainder to another. Voluntary distribution of a chattel for life also inures to the benefit of the remainderman, so that upon the termination of the life estate the title and right to possession vest absolutely in the remainderman without any action on the part of the executor or administrator." 33 Am. Jur., Life Estates, Remainders, etc., sec. 221.

Notwithstanding the provisions of her husband's will in her favor, Mrs. Kurtz recognized Bessie's rights under the agreement and reaffirmed it years later after her marriage to Billingsley. Mrs. Duncan was not entitled to the property during Mrs. Billingsley's lifetime but was entitled to it immediately after her death and asserted her claim thereto promptly after her death.

It is said in the majority opinion that Daniel Kurtz's interpretation of the agreement was not that Bessie had a vested remainder interest in the property because he remained in possession and control until his death and by his will left the property in fee to his wife and made another provision for the complainant. This is to say that he ignored entirely the solemn agreement that he and

his wife made after the execution of the will and expressly for the complainant's benefit. I find nothing in the record to support the statement that he had possession or exercised any control over the property after the execution of the agreement. The will was not effective as to this property because it was not a part of the testator's estate at the time of his death, and the bequest to Mrs. Kurtz was revoked by the agreement. 68 C. J., Wills, sec. 543; 28 R. C. L. Wills, secs. 341, 343. As said by Chancellor Kent in Re Sprague's Estate 125 Mich. 357, 84 N. W. 293, 295: "The cases have been investigated and discussed with the utmost research and ability by the courts of law and equity, and the principle against and again recognized and confirmed that, by a conveyance of the estate devised, the will was revoked, because the estate was altered, though the testator took it back by the same instrument, or by a declaration of uses. The revocation is upon the technical ground that the estate has been altered or newly modeled since the execution of the will. The rule has been carried so far that, if the testator suffered a recovery for the purpose of confirming the will, it was still a revocation, for there was not a continuance of the same unaltered interest."

But even granting that the will was effective, even though it antedated the agreement, complainant's rights were not destroyed thereby because Mrs. Kurtz was a party to the agreement and agreed to accept a life interest only in the stocks and bonds which were given her absolutely in the will, as well as in the jewels which her husband had given her, and had agreed that complainant should have the remainder interest therein.

But it is said that the parties are bound by the interpretation which they themselves placed upon the agreement, and that Mrs. Billingsley understood that she had

an absolute title as indicated by the fact that she conveyed the real estate to her second husband, though she obtained a reconveyance of it, and disposed of some of the bonds in her lifetime, and made a different disposition of some of the jewels in her will, and that Mrs. Duncan acquiesced in this construction of the agreement. I find no proof in the record that Mrs. Duncan acquiesced in Mrs. Billingsley's conveyance of the real estate or bonds, or in her bequest of a part of the jewels. So far as appears Mrs. Duncan had no knowledge of her aunt's conveyance or the sale of the bonds. It does appear that in some way it was brought to Mrs. Billingsley's attention that Bessie was asserting her rights under the agreement, and this is doubtless the reason why she obtained a reconveyance of the real estate from her husband; and she explained that "George" had stolen seven of the water bonds, and assured Bessie that she would get the real estate back and will it to her.

Mrs. Duncan is not to be held to have acquiesced in these transactions about which she knew nothing until after they had occurred.

Mrs. Duncan had the right to require her aunt to give security for the delivery of the property in which she had a remainder interest, but she is not to be held to have waived her rights in the property which remained in her possession at the time of her death. The courts are anxious to safeguard the rights of holders of future interests in personalty, and where the property is of a liquid nature security will be required. 33 Am. Jur. sec. 223; Barmore v. Gilbert, 151 Ga. 260, 106 S. E. 269, 14 A. L. R. 1060 and note at page 1066 et seq.; Cook v. Collier (Tenn. Ch. App.), 2 S. W. 658; 101 A. L. R. 266 and note at page 271 et seq.

The complainant has not sued to recover from the estate the value of the property which her aunt had disposed of in her lifetime, or even the diamond ring which she bequeathed to her niece Mary Lee Billingsley under the fourth item of her will; she merely sues to recover the property which remained in her aunt's possession at the time of her death, namely, the household goods, etc., in the house on Pontotoc Street the State Savings Bank stock and the jewelry, all of which rightfully belonged to her under the 1905 agreement. Under the holding in the case of Cook v. Collier, supra, I think she would have been entitled to maintain her action against the executor for the value of all of the stocks and bonds which came into her aunt's possession, and to have delivered to her the household goods and the bank stock and jewelry on hand at the time of her aunt's death.

As I see it, complainant's rights are determined by the question whether the agreement of September, 1905, was a valid and binding agreement. If it was a valid agreement the residence and the stocks and bonds were not a part of the Daniel Kurtz estate and she was not estopped by her acceptance of the legacy of $2,000 left her under his will. There is nothing in the record to indicate that the provision made for her under the agreement was in lieu of the bequest to her under his will. She was therefore not required to elect whether she would claim under the agreement or under his will, and the question of estoppel does not arise.

The devise of the Pontotoc Street place to complainant under the will of Mrs. Billingsley is not inconsistent with her rights to it under the agreement, but was in furtherance of it; so the complainant was not required to elect whether she would claim the place under the will or under the agreement. As I view it, the question of

estoppel does not arise in the case. Mrs. Duncan is not attempting to defeat any other provisions of the will by the acceptance of the devise of the real estate; she is merely asserting her right to the property in which Mrs. Billingsley had only a life estate and which could not pass to the residuary legatee under her will.

The court in the prevailing opinion did not pass upon the appellant's eleventh assignment of error which was based upon the action of the Chancellor in excluding the testimony of complainant as to the genuineness of the signature of Daniel Kurtz and Lida G. Kurtz to the agreement of September 5, 1905. This testimony was competent. The question of the genuineness of these signatures relates to an independent fact and not to a conversation or transaction with the decedents, so the provisions of section 9780 of the Code have no application. Klein v. York, 149 Tenn. 81, 257 S. W. 861, 31 A. L. R. 452; Minnis v. Abrams, 105 Tenn. 662, 58 S. W. 645, 80 Am. St. Rep. 913. The genuineness of these signatures is not denied by a plea of non est factum on this appeal, so the question may not now be material; but such a plea might be filed in the event of a remand of the case; and in such event the complainant should not be bound by what seems to me to have been a clearly erroneous ruling of the chancellor on this trial.

For the reasons stated I respectfully dissent from the conclusion reached by the majority. In my opinion the agreement of September, 1905, was a valid and binding agreement and the decree of the Chancellor should have been reversed and a decree rendered here in favor of complainant at the cost of the executor.